76976. STATE OF GEORGIA et al. v. STUCKEY HEALTH CARE, INC.
(375 SE2d 235)

SOGNIER, Judge.

Stuckey Health Care, Inc., the owner and operator of nursing home facilities in Georgia, brought suit against the State of Georgia and the Department of Medical Assistance (DMA), an agency thereof, to recover Medicaid reimbursement for certain patients pursuant to its provider agreement. The trial court granted Stuckey's motion for summary judgment and denied that of the State and DMA. This appeal ensued.

The record reveals that in August 1982, 33 patients at South Carolina State Hospital relocated to Georgia and were placed in appellee's nursing homes. At that time, appellants and the State of South Carolina were parties to a reciprocal interstate agreement governing Medicaid coverage for out-of-state long-term care placements, pursuant to which appellants agreed to provide coverage for those long-term care patients in Georgia who were residents of South Carolina and were otherwise Medicaid eligible. This agreement was terminated

on March 1, 1983, and thereafter appellants refused to reimburse appellee under the provider agreement between appellants and appellee for the care of these patients, alleging that they were not obligated to do so because the patients were not Georgia residents and thus did not meet appellants' eligibility requirements. Prior to the termination date of the interstate agreement, representatives of South Carolina met with all the patients in question at appellee's facilities, and advised them that South Carolina would arrange to transfer them back to South Carolina facilities if they wished, or they could choose to remain in Georgia. Eighteen of the original group of thirty-three patients opted to remain in Georgia and signed statements to that effect.

1. Appellants contend the trial court erred by granting summary judgment to appellee and denying their own motion for summary judgment because under the contract between appellants and appellee (the "Statement of Participation"), reimbursement for services to patients in appellee's facilities was contingent upon the patients' eligibility, and these patients were not eligible.

Appellants first argue that under both federal and state law, "eligible" means "certified," and since it was uncontroverted the patients in question were not "certified," it follows that they were not "eligible" within the meaning of the Statement of Participation. We do not agree that the terms are synonymous. Certification is not, as appellants argue, a definition of eligibility. Rather, eligibility is first determined by reference to a set of criteria, and then, if determined eligible, the individuals are certified. Appellants' own "Policies and Procedures for Nursing Home Services (Part I, Policies and Procedures Applicable to All Medicaid Providers)," in Section 102.2, "*Medical Assistance Eligibility Certifications*," provides that "[e]ach month Medical Assistance Eligibility Certifications . . . are issued to individuals or families *as evidence of eligibility*." (Emphasis supplied.) Appellants' reliance on definitions in OCGA § 49-4-141 (5) and (7) is misplaced here, as those portions of the Georgia public assistance statutory scheme define a "recipient of medical assistance" rather than one who is "eligible." Thus, appellants' argument that because these particular patients were not "certified," they were not "eligible," has no merit.

Appellants also argue that federal regulations bar patients whose original placement was accomplished by an agency of another state from becoming Georgia residents for the purpose of Medicaid eligibility. We agree with appellants that the regulation in question, 42 CFR § 435.403, does set forth the general rule that "[a]ny agency of the State, including an entity recognized under State law as being under contract with the State for such purposes, that arranges for an individual to be placed in an institution located in another State, is recog-

nized as acting on behalf of the State in making a placement. The State arranging or actually making the placement is considered as the individual's State of residence." 42 CFR § 435.403 (e) (1). However, it is not clear from the record here that the original placement was accomplished by a South Carolina state agency. In fact, in their brief appellants themselves argue that appellee sought out these patients and was actively involved in the decision to place them in its facilities in Georgia.

Further, even assuming the original placement *was* by a South Carolina state agency, the patients who remained in Georgia did not do so as a result of a South Carolina state agency placement. This is borne out by the fact that ten of the original patients returned to South Carolina, and it was only those patients who voluntarily expressed a desire to be in Georgia who remained in Georgia nursing homes. The record indicates that these patients expressed in writing their will and intent to be Georgia residents. 42 CFR § 435.403 sets forth detailed guidelines for determining who is a state resident for Medicaid purposes, and provides that for any institutionalized person over 21 years of age capable of indicating intent, "the State of residence is the State where the individual is living with the intention to remain there permanently or for an indefinite period." 42 CFR § 435.403 (i) (4). A person is deemed incapable of indicating intent only if the individual has an I.Q. of 49 or less or a mental age of 7 or less, has been judged legally incompetent, or is found incapable of indicating intent based on medical documentation from a licensed medical professional. 42 CFR § 435.403 (c). (Although the regulation provides that for an institutionalized individual who became incapable of indicating intent at or after age 21, the State of residence is the State in which he or she is physically present, *except where another State makes a placement,* no such exception is made for those individuals who are capable of indicating intent.) While it is true that the record reflects the patients in question here had mental difficulties, nothing in the record suggests, and appellants do not argue, that they were incapable of indicating intent. We conclude, therefore, that these patients expressed their intent to become Georgia residents and that by doing so, they became Georgia residents. This conclusion also comports with principles of Georgia law concerning domicile and residence. See generally *Sorrells v. Sorrells,* 247 Ga. 9, 12 (3) (274 SE2d 314) (1981). Since it is uncontroverted that these patients were otherwise eligible for Medicaid in Georgia, there remained no genuine issue of material fact for a jury to determine, and the trial court did not err by granting appellee's motion for summary judgment and denying that of appellants. See *Gray v. Gober,* 185 Ga. App. 624, 628 (3) (365 SE2d 279) (1988).

2. Although appellants enumerate as error the grant of relief to

appellee based on the doctrine of sovereign immunity, such immunity was waived "as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by [appellants]." Ga. Const. 1983, Art. I, Sec. II, Par. IX (a). See also OCGA § 50-21-1 (a). Having determined in Division 1, supra, that recovery was proper under the contract between appellants and appellee, it follows that a defense based on sovereign immunity is not available to appellants.

3. We find no merit in appellants' contention that appellee lacks standing to challenge appellants' determination of the recipients' eligibility. The Statement of Participation which forms the contract between appellants and appellee provides that appellants will reimburse appellee only for eligible recipients. A decision by appellants that certain recipients are ineligible results in a decision not to reimburse appellee under the contract. If appellee is deprived of a benefit to which it deems itself entitled under the terms of the contract, it has standing to address such a breach, regardless of the fact that the designation "eligible" applies to third parties. Appellee's action is, in actuality, no more than a suit for breach of contract against the State, which is specifically permitted by OCGA § 50-21-1.

4. Appellants finally contend the trial court erred by granting summary judgment to appellee and by denying their own motion for summary judgment because appellee failed to exhaust its administrative remedies. We note in this connection the conflict between this enumeration and both appellants' own argument, addressed in Division 3, supra, that appellee has no standing to raise the issues with which this action is concerned and the deposition testimony of Beth McGown, Director of the Division of Program Integrity for appellant Department of Medical Assistance, that no method exists for nursing home directors to challenge eligibility decisions administratively. However, we need not address this enumeration, as it was not raised below. It is well established law that " ' "[e]numerations of error which raise questions for the first time on appeal present nothing for decision. (Cits.)" [Cit.]' [Cit.]" *Wilson v. City of Atlanta*, 184 Ga. App. 651 (362 SE2d 460) (1987).

*Judgment affirmed. Deen, P. J., and Carley, J., concur.*

DECIDED SEPTEMBER 28, 1988 —
REHEARING DENIED OCTOBER 14, 1988 —

*Michael J. Bowers, Attorney General, H. Perry Michael, First Assistant Attorney General, William C. Joy, Senior Assistant Attorney General, Kathryn L. Allen, Assistant Attorney General*, for appellants.

*Stanley G. Jackson*, for appellee.