A89A1660. HYZER et al. v. HICKMAN.
A89A1661. SHEAN v. HICKMAN.
(393 SE2d 79)

McMURRAY, Presiding Judge.

In the fall of 1985 Mike Shean and Earl Hickman, an attorney, met and decided to enter the home construction business. Hickman was to secure the financing of the project while Shean would provide technical knowledge and supervise the actual construction.

A corporation was formed to conduct the business. The 500 shares issued by the corporation were divided between Hickman (166 shares) and two investors, Hickman's brother and a friend (167 shares each). The three shareholders composed the board of directors, while

Hickman also served as president and treasurer. Although Shean was not a shareholder, the corporation bore his name as Mike Shean Signature Homes, Inc.

The initial funding for the corporation of $223,000 came from five sources. Each of the shareholders provided $10,000 to the corporation. Most of this $30,000 was identified as a loan and no more than $500, the statutory minimum, was ever designated as capital of the corporation. Hickman's client, Intercontinental Enterprises, Inc., loaned the corporation $190,000. The remaining $3,000 was loaned by Hickman's professional corporation. With these funds six building lots were purchased by the corporation. In order to protect the original loans the corporation executed a promissory note and a deed to secure debt to the assets of the corporation to Hickman personally.

Six construction loans totaling $600,000 or more were obtained from Home Federal Savings & Loan Association ("Home Federal"). In order to obtain the construction loans, Hickman subordinated the security interest he held to the construction loan notes.

The corporation was allowed to make draws on the construction loans as progress was made in the fabrication of the houses. Upon completion of the first house more than 80 percent of the available construction loans ($480,000) had been drawn. Nonetheless, in order to pay bills in connection with the completion of the first house, Hickman loaned the corporation an additional $20,000 a few days before the closing on the first house was completed.

The first and only house completed by the corporation was sold to Peter and Bette Hyzer. At the closing on the sale to the Hyzers, Hickman received a check for $63,358.33. More than $20,000 was retained by Hickman as payment of principal and interest on the loan he had made to the corporation shortly before the closing. The remainder was placed in the corporation's account to pay for construction expenses and also for expenses from a workers' compensation claim that arose from an incident which predated the corporation's purchase of workers' compensation insurance.

Following the Hyzer sale, Shean resigned and construction ended on the remaining houses. To forestall a foreclosure by Home Federal, Hickman determined that the corporation was in default under its note to him and foreclosed on the remaining residences. Hickman then sold the remaining five homes to another construction company for cash, a promissory note, and assumption of the construction loans. The proceeds of this sale were and are to be distributed to the four original lenders.

After moving into their new house the Hyzers discovered various defects in the construction of the residence. The Hyzers' attempts to have the problems remedied under the corporation's warranty of the house were unsuccessful.

This action was commenced in April 1987 when Walk Softly, Inc., filed an action asserting a labor and materialman's lien arising from the construction of the Hyzers' home. The Hyzers filed cross-claims against the corporation for indemnity on Walk Softly's claim and direct claims against the corporation for breach of contract predicated on the defects in the new home. The Hyzers also filed third party complaints against Hickman and Shean seeking indemnity on the Walk Softly claim. These portions of the action have been resolved by the default of the corporation and by this Court's decision affirming summary judgment in favor of the Hyzers on the Walk Softly claim. See *Walk Softly, Inc. v. Hyzer*, 188 Ga. App. 230 (372 SE2d 500).

The issues on appeal arise from the Hyzers' and Shean's claims against Hickman individually, predicated upon a theory of piercing the corporate veil. The Hyzers' third party complaint seeks damages against Shean for breach of contract and against Hickman for the defects in their home, the failure of the corporation to make contracted improvements and additions to the home, and the corporation's failure to honor the homeowner's warranty. Shean, as third party defendant, cross-claims against Hickman seeking indemnity for any judgment against him in the Hyzers' third party action and for the amount of his breach of contract claim against the corporation. Case No. A89A1660 is the Hyzers' appeal and Case No. A89A1661 is Shean's appeal from the grant of summary judgment in favor of Hickman on the issues raised in the third party action. *Held*:

1. "If a corporation is organized and carries on a business without substantial capital in such a way that the corporation is likely to have insufficient assets available to meet its debts, it is inequitable that the stockholders should set up such a flimsy organization to escape personal liability. 'Inadequate capitalization' means capitalization very small in relation to the nature of the business of the corporation and the risks the business necessarily entails. The attempt to do corporate business without providing any sufficient basis of financial responsibilities to creditors is an abuse of the separate entity and will be ineffectual to exempt stockholders from corporate debts. It is coming to be recognized as the policy of the law that the stockholders should in good faith put at the risk of the business unencumbered capital reasonably adequate for its prospective liabilities. If the capital is illusory or trifling compared to the business to be done and the risks of loss, this is ground for denying the separate entity privilege. . . .

"The adequacy of capital is to be measured as of the time of formation of the corporation. A corporation that was adequately capitalized when formed but which subsequently suffers financial reverses is not undercapitalized." Fletcher Cyc Corp & Cumulative Supplement § 44.1. See also 46 ALR3d 428 and *Tigrett v. Pointer*, 580 SW2d 375.

In the cases sub judice, we have a corporation, with no more than

$500 in capital, setting out to construct six houses which when completed could be anticipated to sell for a total sum in excess of one million dollars. Even though only one of the houses was completed, the corporation had as much as approximately $700,000 of borrowed money invested in the project. A jury could easily determine that the $500 capital of the corporation was entirely insignificant in relation to the risks accompanying a construction project of this scale. Satisfaction of former OCGA § 14-2-171 (a) (8), requiring minimum capital of $500, does not preclude a determination that a corporation is undercapitalized.

Parties entering into contractual relations with corporations are entitled to assume that the corporation is more than a shell. "[I]nadequate capitalization is not of itself a badge of fraud, unless capitalization is very small in relation to the nature of the corporation's business and to the risks that the business entails." 18 AmJur2d, Corporations, § 49. See 18 AmJur2d, Corporations, § 50. The courts are constantly demonstrating a willingness to disregard the separateness of the entity of a corporation where such corporation has overextended its privileges in the use of the corporate entity to defeat justice, to perpetuate fraud, or to evade statutory, contractual or tort responsibility. *Amason v. Whitehead*, 186 Ga. App. 320, 321-322 (367 SE2d 107); *Saxton v. Luke*, 164 Ga. App. 170, 171 (296 SE2d 751). See also *Sheppard v. Tribble Heating & Air Conditioning*, 163 Ga. App. 732 (294 SE2d 572).

We need not decide whether grossly inadequate capitalization by itself is an adequate basis for piercing the corporate veil. In the cases sub judice, there is also evidence of preferential distributions by the corporation, after it became insolvent, to Hickman. We are referring both to the repayment to Hickman of the unsecured loan made shortly before the closing on the Hyzer house and also to Hickman's rights under the note received in the transaction disposing of the remaining five houses. See *Fountain v. Burke*, 160 Ga. App. 262 (287 SE2d 39) and *Ware v. Rankin*, 97 Ga. App. 837 (104 SE2d 555).

Hickman would distinguish *Fountain* on the basis that the present case deals with secured debt, however, this contention is not relevant to the unsecured loan and there is evidence that the corporation was insolvent at the time the security interests were created. Nor are *Fountain* and *Ware* erroneous for the reasons stated in *Scroggins v. Ridge Nassau Corp.*, 135 Ga. App. 547, 548 (1) (218 SE2d 448). It is the *Scroggins* decision which should be distinguished or viewed as erroneous since it overlooks previous authority, such as *Ware* which is cited in *Fountain*, wherein legal remedies are asserted against the officers of insolvent corporations to recover preferentially disbursed funds. Insofar as any confusion of legal theories exists in *Fountain* it does not affect the result which is clearly predicated upon the princi-

ple that the "president of the defendant corporation could not, after the corporation became insolvent, seize all its remaining assets and apply them to a debt owed by the corporation to himself personally, thereby rendering it incapable of paying its other business debts." *Fountain* at 264 (2). Also, while *Fountain* is technically only mere physical precedent, *Ware* is binding authority and equally supportive of the proposition that a preferential distribution by an insolvent corporation to an officer or shareholder gives rise to legal remedies.

Additionally, we must note that this is not an action to recover merely the funds preferentially disbursed to Hickman, but an action which seeks to pierce the corporate veil so as to render Hickman liable for the debts of the corporation. The relevance of the evidence concerning the misappropriation is not to establish the existence of a trust fund which may be recovered, but to contribute to a showing, of that abuse of the privilege of doing business in corporate form, which compels a piercing of the corporate veil and disregard of the corporate form.

Genuine issues of material fact remain as to whether the circumstances authorize the piercing of the corporate veil and disregard of the corporate entity so as to hold Hickman personally liable for the debts of the corporation. This decision must be made separately for Shean and for the Hyzers, as their relationships with the corporation are somewhat different and this determination must be made on the facts of each case. In reaching our conclusion that the summary judgment in favor of Hickman was error we have not reached all of the theories argued and do not intend to express any opinion as to the merit of those not mentioned in this opinion.

2. Shean also enumerates as error the state court's refusal to award attorney fees under OCGA § 9-11-56 (g). However, this issue does not appear to have been raised before the trial court, but for the first time on appeal. No reference to the record showing that this issue was raised before, or ruled upon by, the state court is made as required by Rule 15 (a) (1) of the Rules of the Court of Appeals of the State of Georgia, nor have we found any. Under these circumstances nothing is presented for review on appeal. See *Ewald v. Security Pacific Credit Corp.*, 190 Ga. App. 615, 616 (1) (379 SE2d 569); *State of Ga. v. Stuckey Health Care*, 189 Ga. App. 126, 129 (4) (375 SE2d 235).

*Judgments reversed. Banke, P. J., Birdsong, Pope and Cooper, JJ., concur. Carley, C. J., and Beasley, J., concur in the judgment only. Deen, P. J., and Sognier, J., dissent.*

DEEN, Presiding Judge, dissenting.

The majority's reliance in Division 1 on *Fountain v. Burke*, 160 Ga. App. 262 (287 SE2d 39) (1981), is misplaced, as that case is a

physical precedent only, and because it concerns the theory of misappropriation by a shareholder of the assets of an insolvent corporation. Compare *Abbott Foods of Ga. v. Elberton Poultry Co.*, 173 Ga. App. 672, 673 (2) (327 SE2d 751) (1985). "There is some authority that equity may decree a corporate officer or stockholder personally liable for a corporate debt where it is shown that he had misappropriated corporate assets. [Cits.] However, equitable relief was neither sought in the [Hyzers' third-party] complaint [or Shean's cross-claim] nor could it have been granted by the trial court, the State Court of [Fulton] County, for it has no equity jurisdiction. [Cit.]" *Scroggins v. Ridge Nassau Corp.*, 135 Ga. App. 547, 548 (1) (218 SE2d 448) (1975). Accordingly, the misappropriation theory has no viable applicability in this case.

Since the misappropriation theory is inapplicable, the issue to be resolved is whether the evidence adduced as to the corporation's capitalization would authorize a piercing of the corporate veil. There is considerable doubt whether there is evidence of grossly inadequate capitalization in this case. However, even assuming that a genuine issue of fact did remain as to the corporation's grossly inadequate capitalization, that issue would not be material. The existence of that factor, standing alone, will not provide a basis for piercing the corporate veil. *Fountain* is correct insofar as it notes that undercapitalization is *in itself* a perfectly legal business device. *Fountain v. Burke*, supra at 263 (2). It is, therefore, my opinion that "[t]here is no evidentiary basis in this action by law by which [Hickman] as an individual can be held liable to [the Hyzers or Shean] for [debts] which [were] incurred by the corporat[ion]." *Scroggins v. Ridge Nassau Corp.*, supra at 548 (1). Accordingly, I would affirm the trial court's grant of summary judgment, and I must respectfully dissent to the majority's reversal of that order.

I am authorized to state that Judge Sognier joins in this dissent.

DECIDED MARCH 16, 1990 —
REHEARING DENIED MARCH 29, 1990 — 

*Johnson & Montgomery, Harmon W. Caldwell, Jr., Wade H. Watson III*, for appellants (case no. A89A1660).

*Smith, Currie & Hancock, D. Lee Roberts, Jr.*, for appellant (case no. A89A1661).

*Heyman & Sizemore, William H. Major, William B. Brown*, for appellee.