### S90G0993. HICKMAN v. HYZER et al.
(401 SE2d 738)

CLARKE, Chief Justice.

Peter and Bette Hyzer brought an action against Earl L. Hickman, seeking to hold him personally liable for the obligations of Mike Shean Signature Homes, Inc. ("the Corporation"). The trial court granted summary judgment in favor of Hickman, holding that the undisputed facts demonstrated no abuse of the corporate form that would warrant piercing the corporate veil. The Court of Appeals reversed, saying that evidence of inadequate capitalization and preferential distributions created a genuine issue of fact as to whether the circumstances authorize piercing of the corporate veil and disregarding the corporate entity. *Hyzer v. Hickman,* 195 Ga. App. 213 (393 SE2d 79) (1990). We granted certiorari to consider whether the evidence presented in this case is sufficient to create a genuine issue of fact regarding abuse of the corporate form. We conclude that it is not.

The undisputed facts are as follows: During the fall of 1985, Mike Shean was introduced to Earl Hickman as a person who was competent and experienced in building homes. After some negotiations, they decided to enter the home construction business. Hickman, an attorney, was to secure the financing while Shean would provide the technical knowledge and supervise construction. A corporation was formed to conduct the business. The stockholders were Hickman, his brother and a friend. The three stockholders comprised the board of directors. Hickman also served as president and treasurer. None of the directors was paid a salary. Shean was not a shareholder, but was vice-president of the Corporation. The original meeting of the share-

holders and directors was held on October 31, 1985.

At the outset, each stockholder contributed roughly one-third of the $500 minimum corporate capital required by Georgia law. Each also loaned the corporation about $9,800. A loan for $190,000 was obtained from Intercontinental Enterprises, Inc. These loans were secured by the assets of the Corporation. These funds were placed in an escrow account of Hickman's professional corporation. The money in the escrow account was used to buy six lots on which to build houses, to pay Hickman's professional corporation a fee of approximately $10,000 for professional services (drafting and filing the incorporation papers, etc.), to buy builders insurance, etc. The Corporation obtained a construction loan for $600,000 from Home Federal Savings and Loan Association (Home Federal) and maintained an operating account with Home Federal. Shean was in charge of the Corporation's business, ran its checking account, paid the bills, attempted to build the six houses, and contracted to sell one of the six houses to the Hyzers. Shortly before the sale was to close, Hickman loaned the Corporation $20,000 so that the house could be completed. This sum, plus interest, was repaid to Hickman from the proceeds of the house sale.

A few weeks after the sale of one of the houses to the Hyzers, Shean resigned his position with the Corporation, leaving five houses unfinished. The Corporation defaulted on its loans. Hickman, acting as an agent for the investors, hired an attorney to foreclose on the mortgage secured by the assets of the Corporation. The partially built residences and the lots were eventually bought by another construction company for $100,000 cash, $100,000 promissory note and the assumption of the Home Federal mortgage. All of the stockholders lost all of their invested capital and a portion of the loaned funds. Intercontinental Enterprises, Inc. received about 85 percent of its secured loan. Other than the amounts mentioned above, Hickman has not received any funds from the Corporation.

1. The law of corporations is founded on the legal principle that each corporation is a separate entity, distinct and apart from its stockholders. *Exchange Bank of Macon v. Macon Constr. Co.*, 97 Ga. 1 (25 SE 326) (1895). We have long recognized that "[g]reat caution should be exercised by the court in disregarding the corporate entity. . . ." *Farmers Warehouse of Pelham v. Collins*, 220 Ga. 141, 150 (137 SE2d 619) (1964). However, the court will disregard the separateness of the corporate entity where the corporation has "overextended its privileges in the use of the corporate entity to defeat justice, to perpetrate fraud, or to evade statutory, contractual or tort responsibility." J. Kaplan, Kaplan's Nadler: Georgia Corporation Law, § 3-14 (1988 ed.).

We hold that for undercapitalization of a corporation to justify

piercing the corporate veil, it must be coupled with evidence of an intent at the time of the capitalization to improperly avoid future debts of the corporation. There is no evidence of such intent in this case.

2. Next, we note that it is a common device for small or "close" corporations to capitalize with only a small portion of the investments or contributions represented by shares, and with the larger portion of capital set up as loans to the corporation. J. Kaplan, Kaplan's Nadler: Georgia Corporation Law, § 4-10 (1988 ed.). This method of capitalization has tax advantages for the investors and is not illegal. Further, when such loans go into default, as did the loans in the instant case, the investors are entitled to foreclose on them. However, we note an important caveat. When a corporation becomes insolvent, its directors are "bound to manage the remaining assets for the benefits of its creditors, and cannot in any manner use their powers for the purpose of obtaining a preference or advantage to themselves." *Ware v. Rankin*, 97 Ga. App. 837 (104 SE2d 555) (1958). The abuse of this duty gives rise to an action against the directors to recover sums improperly paid out by the corporation. Id. See also OCGA § 14-2-832. Such an action does not pierce the corporate veil. Instead, it simply rescinds improper payments to shareholders or directors so that funds are available for payment of corporate debts.

We do not reach the issue of whether Hickman made any "preferential distributions" because the Hyzers have not sought the disgorgement of improper distributions. Further, there is no evidence that Hickman has received any funds from the Corporation. Finally, although grossly inadequate capitalization and preferential payments may, under some circumstances, rise to a level of abuse of the corporate form, the undisputed facts of this case demonstrate no abuse of the corporate form sufficient to justify piercing the corporate veil. There is no evidence that Hickman seized assets in order to strip the Corporation of assets necessary to pay existing debts. There is nothing in the record to indicate fraudulent intent. Rather, it appears that Hickman acted to minimize the diminution of the value of the partially constructed homes.

3. The Hyzers contend that Hickman commingled corporate and personal funds by placing the corporate funds in an escrow account over which he had control. We disagree. Rule 3-109 of the Code of Professional Responsibility of the State Bar of Georgia requires a lawyer or law firm to maintain a separate bank for the deposit of client funds so that they will be segregated from the lawyer's individual funds. The evidence demonstrates that Hickman complied with the Bar Rules, did not commingle any of his personal funds with the corporate funds or use any corporate funds for personal purposes. Further, the evidence does not suggest that the corporate form was disre-

garded. The documentary evidence of the existence of a bona fide business corporation includes corporate minutes, stock certificates, notes, deeds, corporate checks, trade accounts, etc. There is nothing to demonstrate that the Corporation was a sham or that Hickman made false or misleading representations to the Hyzers. There is no evidence of fraud.

In sum, we agree with the trial court that this case is a classic example of a failed business, and not a case of wrongdoing, fraud and bad faith on the part of a corporate president. The present record does not create an issue of fact for the jury regarding piercing the corporate veil.

*Judgment reversed. Clarke, C. J., Smith, P. J., Hunt, Benham, Fletcher, JJ., and Judge Watson White concur; Bell, J., dissents; Weltner, J., not participating.*

DECIDED MARCH 15, 1991 —
RECONSIDERATION DENIED MARCH 27, 1991.

*Heyman & Sizemore, William H. Major,. William B. Brown,* for appellant.

*Johnson & Montgomery, Harmon W. Caldwell, Jr., Susan Cole Mullis, Wade H. Watson III, Smith, Currie & Hancock, James K. Bidgood, Jr., D. Lee Roberts, Jr., Paller & Land, Carl A. Crowley III,* for appellees.