## 51570. COTTON et al. v. JOHN W. ESHELMAN & SONS, INC.

WEBB, Judge.

Eshelman & Sons sued the Cottons, husband and wife, for $58,670.75 plus accrued interest, alleged to be the amount due on an open account for the purchase of feed and other supplies. In addition the complaint alleged that a conveyance of certain real property from Thomas E. to Gloria P. Cotton was effectuated for the purpose of defrauding the company and delaying the collection of the indebtedness, and prayed that the conveyance be declared void and the judgment be declared a lien on the property. Mrs. Cotton's motion for directed verdict made at the close of the evidence was denied and the jury returned a verdict

in favor of Eshelman. The Cottons appeal.

1. The appellants maintain that certain invoices, ledger cards and other documents evidencing the open account of Thomas E. Cotton, d/b/a Cotton Patch Poultry Farm, or Grayson Egg Company, were improperly admitted in evidence as business records under Code Ann. § 38-711 for the purpose of showing goods delivered, because no witness testified from personal knowledge in regard to posting the amounts shown thereon or the actual delivery of any goods to the party charged.

The business records statute provides as follows: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event shall be admissible in evidence in proof of said act, transaction, occurrence or event, if the trial judge shall find that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. *All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility.* The term 'business' shall include every kind of business, profession, occupation, calling, or operation of institutions, whether carried on for profit or not. This section shall be liberally interpreted and applied." Code Ann. § 38-711. (Emphasis supplied.)

Appellants' contention that the invoice and ledger cards were inadmissible as business records because a proper foundation was not laid under the above quoted provision overlooks the italicized portion which clearly states that lack of personal knowledge may affect only the weight given the evidence, not its admissibility. There are numerous decisions of this court holding that records made in the regular course of business are admissible regardless of lack of personal knowledge on the part of the entrant or maker. See, e.g., *Allstate Ins. Co. v. Buck,* 96 Ga. App. 376, 378 (100 SE2d 142) and cits.; *Welborn v. State,* 132 Ga. App. 207, 209 (4) (207 SE2d 688).

"The purpose of Code Ann. § 38-711 is to allow the

determination of records without the necessity of producing all the various clerical personnel who made the entries." *Timothy McCarthy Constr. Co. v. Southern Detectives, Inc.,* 125 Ga. App. 205, 206 (186 SE2d 895); *Dowling v. Jones-Logan Co.,* 123 Ga. App. 380, 382 (181 SE2d 75). Such records are admissible upon the testimony of a witness that they were made, kept and maintained in the regular course of business under his supervision, direction and control, even if the witness did not personally keep the records or make particular entries therein. *Robinson v. Reward Ceramic Color Mfg., Inc.,* 120 Ga. App. 380, 384 (6) (170 SE2d 724).

Marshall Jenkins testified that he had been the accountant for Eshelman & Sons for 17 years; that he was familiar with the Cotton account; that it was his responsibility to keep up with the accounts of all of Eshelman's customers; and that he was familiar with the procedure by which entries were posted to an individual customer's account. On cross examination he testified in greater detail as to his knowledge of the delivery and accounting procedures of the business. This testimony, as well as that of Eshelman & Sons' general manager, R. D. Benner, established that the company's business practices were to make account entries either on ledger cards or by computer within a reasonable time after a particular transaction was completed; and that these entries were furnished in the regular course of business by those employees who had actual knowledge of the relevant facts, including delivery.

This testimony was sufficient to lay a proper foundation for the admissiblity of the ledger cards and invoices of the Cotton open account. After being properly admitted into evidence, the weight and credit to be attached to these records was a matter for determination by the jury.

2. The itemizations and summaries of the Cotton account prepared by Mr. Jenkins were also properly admitted in evidence. These summaries were not introduced as business records under Code Ann. § 38-711, but instead were offered solely for the purpose of summarizing voluminous records, which were present in court and available for inspection.

"When pertinent and essential facts can be ascertained only by an examination of a large number of entries in books of account, an auditor or an expert accountant who has made an examination and analysis of the books and figures may testify as a witness and give summarized statements of what the books show as a result of his investigation, provided the books themselves are accessible to the court and the parties. *Bitting v. State,* 165 Ga. 55 (3) (139 SE 877)." *Bible v. Somers Constr. Co.,* 197 Ga. 761 (2) (30 SE2d 623); *Hutcheson v. American Machine &c. Co.,* 129 Ga. App. 602, 603 (200 SE2d 371) and cits.

3. The Cottons contend that the trial court erred in admitting into evidence certain computer printouts showing transactions that made up a portion of their open account. They concede in their brief that "it was clear that Mr. Jenkins generally oversaw the accounting practices of the company," but argue that he was not familiar enough with the computer program to lay the necessary foundation as business records under Code Ann. § 38-711.

Mr. Jenkins' testimony established that the computer printouts were a part of a computer account system implemented by the company in 1972 to replace the earlier posting system utilizing ledger cards. Therefore the business records introduced to prove the indebtedness of Thomas E. Cotton on the open account consisted of both ledger cards with supporting documents and computer printouts. Jenkins testified that both the cards and the printouts were used, in turn, in the regular course of business; that he was responsible for maintaining and certifying accounts and records of accounts under both systems; and that he supervised the maintenance of all the company's records and would certify their accuracy.

While the question of proof of business records stored on tape on electronic computing equipment has not previously been considered in this state, those jurisdictions which have dealt with the issue have generally held that the proper foundation to be laid is the same as that for business records of any other type or description. See Merrick v. U. S. Rubber Co., 440 P2d 314 (Ariz. 1968); Rogers v. Frank Lyon Co., 489 SW2d 506

(Ark. 1973); King v. State, 222 S2d 393 (Miss. 1969); Union Electric Co. v. Mansion House Center North Redevelopment Co., 494 SW2d 309 (Mo. 1973); Transport Indemnity Co. v. Seib, 132 NW2d 871 (Neb. 1965); State v. Springer, 197 SE2d 530 (N. C. 1973); Railroad Commission of Texas v. Southern Pacific Co., 468 SW2d 125 (Tex., 1971); and United States v. De Georgia, 420 F2d 889 (9th Cir. 1969). See also, Annotation, 11 ALR3d 1377.

Clearly the requirements imposed by the business records statutes of the various jurisdictions will vary depending upon the act adopted by the particular state. See generally, Green, Georgia Law of Evidence, § 312, p. 613. The Georgia statute does not prescribe the form or type of record to be admitted in evidence, providing merely for the admissibility of any "writing or record, whether in the form of an entry in a book *or otherwise. . .,*" and vesting a wide discretion in the trial judge. Code Ann. § 38-711. (Emphasis supplied.) Moreover, the sanction that the section be liberally interpreted and applied was expressly reiterated by a resolution of legislative intent. (Ga. L. 1958, p. 542). Thus we conclude that our statute was intended to bring the realities of business and professional practice into the courtroom and should not be interpreted so as to destroy its obvious usefulness.

Eshelman's computer now performs its bookkeeping tasks in the regular course of business. The only difference insofar as the business records are concerned is that instead of on paper the information and calculations are stored on tape, but may be retrieved and printed at anytime. As with the other types of business records introduced in evidence by the company, it was shown through the testimony of Mr. Jenkins and Mr. Benner that entries were made within a reasonable time and were furnished in the regular course of business by employees having actual knowledge of the relevant facts.

"This procedure fits squarely that approved in United States v. Olivo, 3 Cir., 278 F. 2d 415, wherein it was said: 'The witness testified to a well-established business procedure not only in the trade, but specifically in the very company which had prepared the document. All the hallmarks of authenticity surround this

document, since it was made pursuant to established company procedures for the systematic, routine, timely making and preserving of company records.' " *Transport Indemnity Co. v. Seib,* 132 NW2d 871, 875 (Neb.), supra. For the reasons stated and under the authorities cited in Division 1, supra, the computer printouts, like the other business records, were properly admitted in evidence.

4. Appellants contend that the trial court erred in denying Gloria P. Cotton's motion for directed verdict on the issue of whether there had been a fraudulent conveyance from Thomas E. Cotton to her. It is urged in the alternative that even if that motion was properly denied, there was insufficient evidence to support the jury's verdict setting aside the conveyance and it should not be allowed to stand.

We find no merit in either contention. "The court is bound to consider the evidence in the light most favorable to the party opposing a motion for directed verdict. *Everett v. Miller,* 183 Ga. 343 (188 SE 342); *Curry v. Roberson,* 87 Ga. App. 785 (75 SE2d 282); *Whitaker v. Paden,* 78 Ga. App. 145 (1) (50 SE2d 774). And after verdict is rendered and approved by the trial judge the evidence must be construed so as to uphold the verdict if there are discrepancies. See: *Wren v. State,* 57 Ga. App. 641, 648 (196 SE 146); *Boatwright v. Rich's, Inc.,* 121 Ga. App. 121 (173 SE2d 232), and cases cited." *Peachstone Development, Ltd. v. Austin,* 133 Ga. App. 684 (212 SE2d 18). Also, a refusal by the trial court to direct a verdict is to be reversed only upon a showing of abuse of discretion. *Claude S. Bennett, Inc. v. Vanneman,* 95 Ga. App. 140, 145 (1) (97 SE2d 375).

Code § 28-201 (2) provides in pertinent part that the following acts are fraudulent in law: "Every conveyance ... made with intention to delay or defraud creditors, and such intention known to the party taking ..." "When a transaction between a husband and wife is attacked for fraud by a creditor of either, the onus is on the husband and wife to show that the transaction was fair. Code § 53-505. *Parker v. Harling,* 189 Ga. 224 (5 SE2d 755). Whether there has been sufficient proof of the good faith of the transaction or of the wife's lack of knowledge of her husband's business affairs or debts is a question for

determination by the jury. *Mercantile Nat. Bank v. Aldridge,* 233 Ga. 318, 319 (210 SE2d 791) and cits. See also, *Dickson v. Citizens Bank &c. Co.,* 184 Ga. 398 (4) (191 SE 379).

The evidence here was ample to support a finding that the conveyance was in fact fraudulent under these standards. The jury was authorized to deduce from Eshelman's business records and the testimony of its witnesses that Mr. Cotton was heavily indebted to it in February, 1972 at the time the conveyance was made. Benner, the general manager, testified that on January 1, 1972 the indebtedness was $54,697.30. There was also evidence of indebtedness to other creditors, and that the property in question was originally acquired by Mr. Cotton in 1959 and not transferred to Mrs. Cotton until 1972 when he was heavily in debt. Certain checks to Mr. Cotton signed by Mrs. Cotton introduced in evidence by the appellants, which were purported to be in payment for the property conveyed, were drawn on various joint accounts of the Cottons. However, Mrs. Cotton was unable to explain fully on cross examination as to the source of the funds in these accounts.

It was also shown on cross examination that on several occasions when Mrs. Cotton drew checks on these joint accounts, cashier's checks in the same amount were drawn payable to Mr. Cotton on the same days; that the cashier's checks were used by Mr. Cotton to pay for feed after he had been placed on a cash payment basis by certain suppliers; and that Mrs. Cotton sometimes placed the orders for this feed on her husband's behalf.

It was further revealed that no security deed or promissory note was prepared in connection with the sale of the property; that there were no due dates set for payments; that payments were made at irregular intervals and in varying amounts; and that there was no time limit on payment of the obligation. Mrs. Cotton could not recall the rate of interest or the total balance still owing and the attorney who prepared the deed testified that no closing statement was prepared. A financial statement given by Cotton to the company in June, 1972, represented that the property conveyed by him to Mrs. Cotton in February, 1972, was still owned by him.

While Mrs. Cotton testified that there was a set purchase price of $700 an acre to be paid by her for the purchase of the land transferred, and as to various sources of her personal income, the weight of this testimony must be measured by the other circumstances bearing upon the same question. *Arrington v. Awbrey,* 190 Ga. 193, 197 (4) (8 SE2d 648). These facts created a jury question and accordingly it was not error to deny the motion for directed verdict. *Oliver v. Farmer's State Bank,* 224 Ga. 56 (159 SE2d 405). The jury's verdict was fully supported by the evidence.

*Judgment affirmed. Deen, P. J., and Quillian, J., concur.*

ARGUED JANUARY 14, 1976 — DECIDED JANUARY 23, 1976

*Cook & Palmour, Bobby Lee Cook, Neely & Player, Edgar A. Neely, III, Adam S. Skorecki,* for appellants.

*Kenyon, Hulsey & Oliver, Julius M. Hulsey, J. D. Smith,* for appellee.