A90A0660. SOUTHERN ENVIRONMENTAL GROUP, INC. v. ROSEBUD LANDSCAPE GARDENERS, INC. et al.
(395 SE2d 913)

BEASLEY, Judge.

Southern Environmental Group, Inc. (Southern) was granted permission to appeal the dismissal of garnishment against a sum held by garnishees, the Adamses, and owed by them for landscaping services. The garnishees paid the money into the court registry.

The court, sitting without a jury, made but one finding of fact and conclusion of law and dismissed the garnishment. No further findings were requested by Southern initially, nor was their absence objected to after entry of the order. OCGA § 9-11-52. Thus, the following applies as we review the court's finding that T. W. Flowers, Inc., was not shown to be the alter ego of Rosebud, Inc.: "Whether or not the corporate entity should be disregarded depends on the particular circumstances and is a matter properly for the finder of fact. [Cits.] The findings of a judge acting as a jury will not be disturbed if there is any evidence to support the [findings.]" *Southern Keyboards v. Wagnon Constr. &c. Co.*, 163 Ga. App. 590, 592 (295 SE2d 558) (1982).

The supportive evidence shows that Rosebud Landscape Gardeners, Inc. (Rosebud, Inc.) was incorporated by T. W. Flowers in 1985 for the purposes of doing residential and commercial landscaping and maintenance. He was the 100 percent shareholder and director. The attorney who incorporated the company served as its secretary.

Due to drought conditions and other business problems, Rosebud, Inc., began to experience severe financial problems, resulting in numerous judgments against it, including one entered in September 1988 in the amount of $24,945.25 for Southern. Because of these problems, Flowers considered bankruptcy, but it was advised that forming a new corporation was an option. Rosebud, Inc., ceased doing business in late 1988, although the corporation was never formally dissolved.

T. W. Flowers, Inc. (Flowers, Inc.) was formed on December 19, 1988, with three shareholders. The same attorney prepared the corporate documents. Flowers owned 70 percent; Fred Roddy, a friend, owned 15 percent; and Lois Lee, an employee of Rosebud, Inc., and Flowers, Inc., owned the remaining 15 percent. Three directors named in the articles of incorporation were Flowers, Lee, and Thomas Alexander. Alexander was an employee of Rosebud, Inc., who initially was to invest in Flowers, Inc. He dropped out of the stock purchase but he

remained a named director.

On January 3, 1989, a Purchase and Assumption Agreement was entered into by Rosebud, Inc., and Flowers, Inc., in which Flowers, Inc., agreed to pay $114,309.25 for certain assets of Rosebud, Inc., including all job equipment, office equipment and supplies, good will, two accounts receivable, signs, and a perpetual license to operate as "Rosebud Landscape Gardeners." This included Rosebud, Inc.'s logo containing "Rosebud Landscape Gardeners." Flowers, Inc., also agreed to assume certain debts of Rosebud, Inc. The debts assumed did not include Southern's but consisted of the tax liabilities and all loans which had been personally guaranteed by Flowers. Assumption of these debts, with $8,000 cash, totalled the purchase price.

Employees of Rosebud, Inc., were advised at a meeting that it was ceasing doing business and that a new corporation would be taking over. They were all carried over to Flowers, Inc., and were given credit for their vacation time accrued with Rosebud, Inc. New tax forms were filled out for them.

Separate bank accounts were set up for Flowers, Inc., and there was no evidence that the respective accounts were ever commingled. The maintenance contracts of Rosebud, Inc., were assigned to Flowers, Inc. The logo of Rosebud, Inc., which read "Rosebud Landscape Gardeners," was used by Flowers, Inc.

The telephone number remained the same and the account remained in Flowers' individual name, as it had from the start of his landscaping business. The bill was paid, however, with Flowers, Inc., checks, as it had earlier been paid with Rosebud, Inc., checks. The utility accounts remained in Flowers' individual name and were similarly paid. The premises from which both corporations operated were owned by Flowers individually and were leased sequentially to Rosebud, Inc., then Flowers, Inc.

The Adamses had done business with Rosebud, Inc., in 1986 and 1987. In midsummer of 1989, they entered into a landscape contract with Flowers, Inc. "d/b/a Rosebud Landscape Gardeners." It was a payment pursuant to this contract that was garnished. Named as a defendant in the garnishment action was "Rosebud Landscape Gardeners, Inc. a/k/a and d/b/a T. W. Flowers, Inc."

In response to the garnishment, Rosebud, Inc., filed its traverse pursuant to OCGA §§ 18-4-65 & 18-4-93, alleging that the garnishment affidavit was untrue in that the Adamses owed nothing to Rosebud, Inc., it having ceased doing business in December 1988. Flowers, Inc., filed a claim to the money, based on its contract with the Adamses.

1. Southern contends, in its first enumeration, that the judge, sitting as trier of fact, "abused his discretion" in finding that the two corporations were not one and the same for purposes of the garnish-

ment. As discussed above, we consider only whether the evidence demanded a finding that Flowers, Inc., was the alter ego of Rosebud, Inc., in effect that the corporate structures of the two companies should be disregarded.

"[T]he cardinal rule of corporate law is that the corporation possesses a legal existence separate and apart from that of its officers, employees, shareholders, and directors. [Cit.]" *Kilsheimer v. State*, 250 Ga. 549, 550 (299 SE2d 733) (1983).

We are unable to find a case directly dealing with two corporations, one of which sells its assets to another, which are sought to be held "alter egos" of each other so that the latter corporation is held responsible for a judgment against the former.

The alter ego and piercing corporate veil theories are generally used for the purpose of impressing an individual with debts incurred by the corporation. "Where the courts have disregarded the corporate entity because the corporation is the mere alter ego or business conduit of a person, it has generally been on the idea that the corporate entity has been used as a subterfuge and to observe it would be to work an injustice. 'To establish the alter ego doctrine it must be shown that the *stockholders'* disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the *separate personalities of the corporation and the owners* no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud.' [Cit.]" (Emphasis supplied.) *Farmers Warehouse &c. v. Collins*, 220 Ga. 141, 150 (2d) (137 SE2d 619) (1964). See, e.g., *Derbyshire v. United Builders Supplies*, 194 Ga. App. 840, 844 (2a) (392 SE2d 37); *Stewart Brothers v. Allen*, 189 Ga. App. 816 (1) (377 SE2d 724) (1989); *Amason v. Whitehead*, 186 Ga. App. 320, 321 (367 SE2d 107) (1988); *Stillman v. Tempo Carpets*, 174 Ga. App. 66 (1) (329 SE2d 197) (1985).

This case involves only technical compliance with the garnishment statute, which is a special statutory proceeding, strictly pursued, to allow a creditor to seize a debtor's funds in the possession of a third person. See *Mull v. Mull*, 167 Ga. App. 687, 688 (1) (307 SE2d 675) (1983); *Anderson v. Ledbetter-Johnson Contractors*, 62 Ga. App. 732 (2) (9 SE2d 860) (1940). It was not a suit against Rosebud, Inc., for fraudulent conveyance of the assets of Rosebud, Inc., to Flowers, Inc. Nor did Southern attempt to enjoin that transfer, as far as the record shows. OCGA § 18-2-22.

The court was not persuaded that the preponderance of evidence melded the two separate corporations. We cannot reweigh the evidence but are bound to uphold the court's decision because there is evidence that the corporate fiction was maintained. *Stillman v. Tempo Carpets*, supra; *Jenkins v. Judith Sans Int'l*, 175 Ga. App.

171 (1) (332 SE2d 687) (1985); *Northwest Preferred, Ltd. v. Williams*, 184 Ga. App. 145 (2) (360 SE2d 910) (1987) (physical precedent).

2. Southern argues that the court failed to consider the existence and relevance of fraud. However, the pages pointed to do not support this allegation. There was admissible testimony concerning the purpose of the transfer. The questions to which objections were sustained, however, asked not for factual bases upon which the witness could have based an opinion, but attempted to elicit the state of Flowers' mind without any such factual bases. The objections were properly sustained.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED JULY 13, 1990.

*W. Courtney LaFon, Beverly J. Hall,* for appellant.
*Thomas T. Tate, Huddleston & Medori, Eugene A. Medori, Jr.,* for appellee.
Myrna V. Adams, *pro se.*
Beau Adams, *pro se.*