A94A1813. GWINNETT PROPERTY, N.V. et al. v. G+H
MONTAGE GmbH.
A94A1814. IRVANI v. G+H MONTAGE GmbH.
A94A1815. G+H MONTAGE GmbH v. IRVANI et al.
(453 SE2d 52)

JOHNSON, Judge.

G+H Montage GmbH, a West German company, contracted with an Iranian corporation to construct a storage facility in Iran. Rahim Irvani, who now lives in England, personally guaranteed payment under the contract. After the Iranian corporation defaulted on the contract, G+H obtained a judgment in England against Irvani based on his personal guarantee. G+H filed the instant action in Gwinnett County, Georgia, asking the superior court to recognize the English judgment and alleging Irvani fraudulently conveyed assets to several corporations. The trial court entered judgment on the jury verdict in favor of G+H, but the Supreme Court reversed the judgment. *Newton Commonwealth Prop. v. G+H Montage GmbH*, 261 Ga. 269 (404 SE2d 551) (1991).

At the second trial, G+H again asked the court to recognize the English judgment, claimed eight corporations are liable for Irvani's personal debts as his alter egos and alleged the corporations are also liable for receiving the fraudulently conveyed assets from Irvani. The jury returned an $8,030,000 verdict against Irvani and seven of the corporate defendants on the fraudulent conveyances claim. The jury also found one of those seven companies, Granite Industrial Development & Services Corporation (GIDS), liable as Irvani's alter ego. The jury further awarded G+H a $2,260,000 judgment against Irvani for attorney fees. The trial court entered judgment on the verdict and recognized the English judgment against Irvani. The trial court also ordered G+H to pay the corporate defendants $21,198 as the costs of the first appeal.

The seven corporate defendants held liable jointly appeal from the judgment and the court's denial of their motion for judgment n.o.v.; Irvani separately appeals. G+H cross-appeals from the order that it must pay the costs of the first appeal.

*Case No. A94A1813*

1. The seven corporate defendants contend the court erred in denying their motion for judgment n.o.v. on the fraudulent conveyances claim because G+H failed to sufficiently plead or prove that Irvani conveyed any assets to them. G+H argues the decisions in *Johnson v. Sheridan*, 179 Ga. App. 331 (346 SE2d 109) (1986) and *Cotton v. John W. Eshelman & Sons*, 137 Ga. App. 360 (223 SE2d 757) (1976), support the proposition that it need not identify any specific convey-

ances from Irvani to the corporate defendants. On the contrary, *Johnson* and *Cotton* undermine G+H's proposition because in both of those cases specific conveyances are identified. Moreover, in each of the Georgia fraudulent conveyances cases relied upon by the parties, there is proof of a specific conveyance by the debtor to the transferee. See, e.g., *Merrell v. Beckwith*, 263 Ga. 779 (439 SE2d 488) (1994); *Lawson v. Athens Auto Supply &c.*, 200 Ga. App. 609 (409 SE2d 60) (1991).

"[OCGA § 9-11-9 (b)] requires that in all averments of fraud, the circumstances constituting the fraud must be stated with particularity. It is generally recognized that this exception to the general liberality of pleading . . . requires that *facts* must be alleged which if proved would lead clearly to the conclusion that fraud had been committed. . . . The circumstances constituting the alleged fraud must be pleaded with sufficient definiteness to advise the adversary of the claim which he must meet." (Citations and punctuation omitted; emphasis in original.) *Continental Invest. Corp. v. Cherry*, 124 Ga. App. 863, 865 (2) (186 SE2d 301) (1971). In a fraudulent conveyances claim asserted under OCGA § 18-2-22, the requirement that fraud be pled with particularity mandates that the claimant identify a specific conveyance with sufficient definiteness to advise the adversary of the conveyance which it must explain. See generally *Leachman v. Cobb Dev. Co.*, 226 Ga. 103, 104 (1) (172 SE2d 688) (1970). The claimant must aver a transfer of the property in question by the debtor to the alleged grantee, specify the time of the transfer and describe the instrument by which the alleged fraudulent conveyance was accomplished. 37 CJS, Fraudulent Conveyances, § 359.

In the instant case, G+H has not identified any specific conveyances from Irvani to the corporate defendants; rather, G+H relies on the broad allegation that $30,000,000 to $38,000,000 has been invested in or loaned to the defendant companies from sources controlled by Irvani. Within this alleged $30,000,000 to $38,000,000 range, G+H has not identified the time, place, method or amount of any specific conveyance made by Irvani to a particular corporation. G+H's broad allegation of fraudulently conveyed money is insufficient because it does not advise the corporate defendants of any particular conveyances they must defend. Moreover, without specified conveyances, the jury could not possibly have known what transfers were at issue, let alone have made a valid determination as to whether a transfer was fraudulent. G+H's allegation of fraudulent conveyances is so broad that it amounts to nothing. See generally *Collins v. Manley*, 223 Ga. 816, 817 (158 SE2d 235) (1967).

In attempting to prove its overly broad allegation of fraud at trial, G+H lumped together hundreds of transactions and essentially challenged the entire financial history of the corporate defendants as

a whole, rather than as separate entities. G+H failed, however, to present any evidence of a specific conveyance by Irvani to any of the corporate defendants. The one piece of direct evidence cited by G+H is a document in which Irvani states he and his sons injected money and effort into Georgia Industries, Inc., one of the corporate defendants. This document may be construed as evidence that Irvani at some time and in some way conveyed some amount of money to Georgia Industries, but it does not show that Irvani conveyed money to any of the other corporate defendants. Even as to Georgia Industries, the document is insufficient proof of any particular conveyance. The document does not specify a conveyance and G+H has not pointed to any other evidence in the record clarifying what conveyance is referred to in the document.

G+H also argues there is circumstantial evidence from which the jury could have inferred Irvani conveyed assets to the corporate defendants through his wife and her corporation, Savoy Investments. "The standard for reviewing the legal sufficiency of circumstantial evidence . . . can be stated as follows: While in such cases the sufficiency of the evidence is for the jury, yet before there is, in legal contemplation, any evidence, the circumstances shown must, in some appreciable degree, tend to establish the conclusion claimed." (Citation and punctuation omitted.) *Southern R. Co. v. Ga. Kraft Co.*, 258 Ga. 232, 233 (367 SE2d 539) (1988). Contrary to G+H's argument, the circumstances in the current case do not in some appreciable degree tend to establish G+H's conclusion that Irvani conveyed money to the defendant corporations through his wife and Savoy. In attempting to reach this conclusion, G+H relies primarily on circumstantial evidence that $38,000,000 was transferred to the corporate defendants; that the defendants claim most of the money was transferred to them by Savoy and the rest by Irvani's wife and sons; that Irvani's wife and sons did not have access to $38,000,000, but only to approximately $18,000,000; and that Irvani himself originally set up the corporate defendants and has sufficient assets to have funded the conveyances to them. This evidence at most leads to the mere inconclusive inference that Irvani could have transferred money to his wife and Savoy, who then conveyed the money to the corporations.

"[W]here there is uncontradicted testimony by a party as to a certain fact . . . then the opposing party must produce 'some other fact' to the contrary. . . . If the 'other fact' is shown directly, that is sufficient for the case to go to a jury, but if it is circumstantial then it must be evidence sufficient to support a verdict. The circumstantial evidence must be inconsistent with the direct testimony and must tend to establish the conclusion projected while rendering less probable all inconsistent conclusions . . . the evidence must not constitute a 'mere inconclusive inference' for then it is insufficient to withstand

summary adjudication." (Citations and footnote omitted.) *Cohen v. Hartlage*, 179 Ga. App. 847, 850 (348 SE2d 331) (1986). The corporate defendants in this case presented direct testimony that Irvani did not convey any money to them, but that Savoy and Irvani's wife and sons made the conveyances. G+H's circumstantial evidence showing that Irvani's sons and wife did not have the assets to convey the entire $38,000,000 to the corporations is inconsistent with the corporations' direct evidence. If G+H's ultimate conclusion were that Irvani's sons and wife did not have the resources to make all of the conveyances, then G+H's circumstantial evidence would be sufficient to create a jury question as to that conclusion. G+H, however, goes a step beyond that conclusion and attempts to infer from the evidence that Irvani himself conveyed the money to the corporations through his wife and Savoy. The circumstantial evidence in this case does not tend to establish this extra inference while rendering less probable the inconsistent conclusion that Irvani is not the source of money for his wife and Savoy. See generally *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 780-783 (257 SE2d 186) (1979).

The inconclusiveness of G+H's attempted inference is especially true because the record is devoid of any evidence that Rahim Irvani was the source of Savoy's assets. G+H's own expert accountant refused to express an opinion that Irvani in fact transferred money to the corporations; the expert instead stated he had seen no direct evidence of any money transferred from Irvani to the corporations and he could not say whether Irvani indirectly transferred money to them through Savoy because he could not determine the source of Savoy's assets. "[L]iability cannot rest upon guesswork, conjecture or speculation beyond inferences reasonably to be drawn from the evidence. . . . [A]n inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility. . . . [N]o inference of fact may be drawn from a premise which is wholly uncertain." (Citations and punctuation omitted.) *Cohen v. Hartlage*, supra at 851. The inference that Irvani fraudulently conveyed money to the corporate defendants is wholly speculative and cannot be reasonably drawn from the circumstantial evidence relied upon by G+H.

G+H further argues that circumstantial support for its fraudulent conveyances claim is also found in the corporate defendants' conflicting explanations of the source of their assets and in the defendants' reliance on oral testimony instead of corporate records to explain their funding. These circumstances are not, however, proof of any specific fraudulent conveyances; rather, they are "badges of fraud" from which the jury might have inferred that a particular conveyance, *once identified*, was fraudulent. See, e.g., *Cotton States Fertilizer Co. v. Childs*, 179 Ga. 23, 28 (174 SE 708) (1934); *Threlkeld v.*

*Whitehead*, 95 Ga. App. 378, 389 (98 SE2d 76) (1957). Because G + H has not identified or offered proof of any specific conveyance, the issue of fraud is not even reached.

A judgment n.o.v. is authorized only where there is no conflict in the evidence as to any material issue and the evidence, with all reasonable deductions therefrom, shall demand a particular verdict. *Lawson v. Athens Auto Supply &c.*, supra at 613 (5). In the instant case, there is no evidence from which the jury could have reasonably inferred that a specific conveyance from Irvani to any of the corporate defendants was made, let alone fraudulent. The evidence therefore demands a verdict in favor of the corporate defendants on the fraudulent conveyances claim and the trial court erred in denying their motion for judgment n.o.v.

2. GIDS contends it is entitled to judgment on the claim that it is liable as Irvani's alter ego. "To establish the alter ego doctrine it must be shown that the *stockholders'* disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of *interest* and *ownership* that the separate personalities of the corporation and the *owners* no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud." (Citations and punctuation omitted; emphasis supplied.) *Farmers Warehouse of Pelham v. Collins*, 220 Ga. 141, 150 (2) (d) (137 SE2d 619) (1964); *Marett v. Professional Ins. Careers*, 201 Ga. App. 178, 180 (1) (b) (410 SE2d 373) (1991). Here, the uncontroverted evidence shows Irvani owns no stock in GIDS. Granite Holdings, Inc., another corporation in which Irvani has no ownership interest, is the sole GIDS stockholder. G + H concedes Irvani does not own any GIDS stock, but theorizes he actually controls and benefits from GIDS, while Granite Holdings is merely its nominal owner. This theory is not supported by sufficient evidence and therefore amounts to mere speculation. Because Irvani is not an owner of GIDS, the alter ego doctrine is inapplicable to this case.

Furthermore, G + H has improperly reversed the use of the alter ego doctrine. That doctrine is generally used for the purpose of piercing the corporate veil to hold an individual stockholder liable for debts incurred by the corporation. *Southern Environmental Group v. Rosebud Landscape Gardeners*, 196 Ga. App. 392, 394 (1) (395 SE2d 913) (1990). Here, G + H has asserted the alter ego theory, not to reach Irvani by piercing the corporate veil, but to hold GIDS liable for Irvani's personal debt. In asserting its reversed alter ego claim, G + H relies on much of the same evidence it cites in support of its fraudulent conveyances claim. This reliance on the same evidence reveals that G + H has not asserted a proper alter ego claim, but has simply recast its fraudulent conveyances theory under the guise of the alter ego doctrine. The trial court erred in denying GIDS' motion for

judgment n.o.v. as to the alter ego claim.

3. Because of our holdings in Divisions 1 and 2, we need not address the corporate defendants' remaining arguments.

*Case No. A94A1814*

4. Irvani asserts the trial court erred in denying his motion to dismiss the claims against him for lack of personal jurisdiction.

(a) G+H argues the court had personal jurisdiction over Irvani under OCGA § 9-10-91 (2), which provides a Georgia court may exercise personal jurisdiction over any nonresident who commits a tortious act or omission within this state. G+H's argument is premised on its claims that Irvani fraudulently conveyed assets to some of the corporate defendants located in Georgia and that his alter ego, GIDS, committed tortious acts in Georgia. As discussed above in Division 1, there is no evidence that Irvani fraudulently conveyed assets to the corporate defendants. Likewise, as addressed in Division 2, G+H did not assert a proper alter ego theory and the jury's verdict that GIDS is Irvani's alter ego cannot be sustained. Consequently, G+H's argument is without merit and OCGA § 9-10-91 (2) provides no basis for the court's exercise of personal jurisdiction over Irvani.

Alternatively, G+H claims the court had jurisdiction over Irvani under OCGA § 9-10-91 (4), which provides a Georgia court may exercise personal jurisdiction over a nonresident who owns, uses, or possesses any real property situated within this state. G+H avers there is evidence from which the jury could have found Irvani and his alter ego, GIDS, own property in Georgia. Again, G+H's reliance on the claim that GIDS is Irvani's alter ego is without merit and cannot support a finding that Irvani owns property in Georgia through GIDS. Contrary to G+H's claim, it has pointed to no competent evidence that Irvani personally owns or possesses any property in Georgia.

Moreover, even if there were evidence that Irvani owns property in Georgia, it would not provide a basis for the court's exercise of personal jurisdiction over him. " '[U]nder the provision of our Long Arm Statute referring to the ownership, use or possession of Georgia realty, jurisdictional requirements are satisfied when a substantial connection or nexus exists between the basis of the controversy and the property within this state.' [Cit.]" *Edelschick v. Blanchard*, 177 Ga. App. 410, 411-412 (2) (339 SE2d 628) (1985). Because there is no evidence of the alleged fraudulent conveyances which form the basis of this controversy, there can be no proof of a substantial nexus between that basis and any property in the state.

"The rule that controls is our statute, which requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction. Where, as here, it

is shown that no such acts were committed, there is no jurisdiction." *Gust v. Flint*, 257 Ga. 129, 130 (356 SE2d 513) (1987). Accordingly, the trial court erred in denying Irvani's motion to dismiss the fraudulent conveyances claim.

(b) As to G+H's action for the court to recognize the English judgment, whether the court had personal jurisdiction over Irvani is irrelevant. "Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter. Thus if it can be shown that the defendant has property in this state, there would be no difficulty in enforcing the [foreign] judgment against him here. Personal jurisdiction over the defendant would, of course, not be required." (Punctuation omitted.) *Williamson v. Williamson*, 247 Ga. 260, 262-263 (2) (275 SE2d 42) (1981). Although *Williamson* involves the domestication of a judgment from another state, we see no reason why it should not apply to an action under OCGA § 9-12-110 et seq., seeking recognition of a judgment from another country. Thus, the court here properly recognized the English judgment if Irvani has any property in Georgia.

G+H again relies primarily on its fraudulent conveyances and alter ego claims to assert that Irvani has property in the state. Because we have decided those claims adversely to G+H, they provide no basis for concluding that Irvani has property in Georgia. G+H has also failed to show evidence that Irvani has any particular piece of property in the state which could satisfy his debt. The trial court therefore erred in recognizing the English judgment and in denying Irvani's motion to dismiss.

### Case No. A94A1815

5. G+H contends the trial court erred in computing the amount of appeal costs it must pay the corporate defendants for obtaining a reversal of the first trial. "If there is a judgment of reversal, the appellant shall be entitled to a judgment for the amount of the costs in the appellate court against the appellee as soon as the remittitur is returned to the court below." OCGA § 5-6-5. The cost of having a transcript prepared by the court reporter is an "expense of appeal" and such expense is not recoverable as a "cost of appeal" by an appellant who obtains a reversal. *Brand v. Montega Corp.*, 233 Ga. 35 (209 SE2d 583) (1974); *Stone Mt. Mem. Assn. v. Stone Mt. Scenic R.*, 232 Ga. 92 (205 SE2d 293) (1974). Here, the trial court ordered G+H to pay the corporate defendants, among other things, $8,642 as the court reporter's cost for preparing a transcript of the documentary offer of

proof made by G+H after the close of the evidence. Because this $8,642 expense for transcript preparation is not a recoverable cost of appeal, the trial court erred in ordering G+H to pay it. See *Flight Intl. v. Dauer*, 180 Ga. App. 405 (349 SE2d 271) (1986). This portion of the court's order is therefore reversed.

G+H further claims the court should have divided the remaining $12,556 costs of the first appeal equally between it, the corporate defendants and Irvani. This claim is without merit. OCGA § 5-6-5 plainly provides that an appellant who obtains a reversal is entitled to the costs of appeal. Here, G+H did not obtain a reversal, but in fact lost the first appeal when the Supreme Court reversed the trial court judgment in G+H's favor. Thus, the trial court properly ordered G+H to pay the corporate defendants $12,556 as the costs of the first appeal.

*Judgment reversed in Case Nos. A94A1813 and A94A1814; judgment affirmed in part and reversed in part in Case No. A94A1815. McMurray, P. J., Birdsong, P. J., Andrews, Smith and Ruffin, JJ., concur. Pope, C. J., Beasley, P. J., and Blackburn, J., dissent.*

BEASLEY, Presiding Judge, dissenting.

I respectfully dissent. First of all, this is not a case about the sufficiency of the complaint. The majority's references to OCGA § 9-11-9 (b) are not relevant to the issues. *Continental Invest. Corp. v. Cherry*, 124 Ga. App. 863 (186 SE2d 301) (1971); *Leachman v. Cobb Dev. Co.*, 226 Ga. 103 (172 SE2d 688) (1970); and *Collins v. Manley*, 223 Ga. 816 (158 SE2d 235) (1967) all deal with the sufficiency of petitions or complaints alleging fraud. In this complex case there have been two jury trials based on a pretrial order, thousands of pages of record, and a reversal of the first judgment by the Supreme Court because the trial court had exceeded the bounds of discretion in limiting the parties in the development and presentation of the case. *Newton Commonwealth Prop. v. G+H Montage GmbH*, 261 Ga. 269 (404 SE2d 551) (1991). That the complaint adequately alleged the fraud is not contested at this stage.

More importantly, I am compelled to disagree with the majority's holding that the circumstantial evidence in this case was not sufficient to authorize the jury to infer that Irvani conveyed the contested millions of dollars to the corporate defendants and that G+H's failure to produce direct evidence that Irvani was the source of the funds by way of specific conveyances was fatal to its case.

There is evidence that the only individuals with any ownership interest in the corporate defendants were Irvani, his wife, and sons, and G+H has accurately summarized its evidence with respect to him as follows: Irvani had the means, motive and opportunity to have substantial assets outside Iran which gave him the ability to fund the

corporate defendants. After he defaulted on his obligation to G+H in 1979, his business associate, Carlson, set up the first of a series of bearer share corporations for which the identity of the owner was concealed. Irvani then came to Georgia and began business operations and real estate acquisitions in the names of these and the other companies which ultimately became the corporate defendants. He personally participated in selecting the property and beginning the corporations, using the same managers and conducting the same kinds of businesses as he had conducted in Iran. He controlled the companies and their assets, and he rather than any other family member or anyone else made the business decisions about them. Employees and bankers were led to believe that the assets of the companies were owned by Irvani, and in forming the banking relationships on behalf of the companies he claimed a $300,000,000 net worth. He acknowledged in writing that he had transferred his own money into Georgia Industries, Inc. Yet, according to Irvani's closing argument, his defense to G+H's case was that he lost everything in the Iranian Revolution.

As acknowledged by the majority, G+H submitted evidence that $30,000,000 to $38,000,000 was transferred to the corporate defendants, which Irvani set up. Defendants claimed that most of the money was transferred to them by Irvani's wife's corporation, Savoy, and the rest by Irvani's wife and sons. However, G+H's accountant showed that all of these were excluded as sources. Moreover, defendants relied upon conflicting oral testimony rather than corporate records to explain their funding. "If a party has evidence in his power and within his reach by which he may repel a claim or charge against him but omits to produce it, or if he has more certain and satisfactory evidence in his power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against him is well founded; but this presumption may be rebutted." OCGA § 24-4-22.

There was no evidence presented by either G+H or the corporate defendants that anyone other than Irvani, his wife (individually or through Savoy), or his sons transferred the monies to the corporate defendants. G+H submitted evidence that Irvani's wife and sons had no more than $18,000,000 in assets. It also showed that Irvani did have sufficient assets to fund the conveyances.

Thus, it was for the jury to say whether or not the circumstances preponderated to the theory that Irvani was the source of the transfers from unidentified "shareholders," as shown on the corporate books, as against all other theories. *Radcliffe v. Maddox*, 45 Ga. App. 676, 682 (2) (165 SE 841) (1932). The jury was authorized to infer that, through whatever circuitous means, Irvani transferred at least $20,000,000 to the corporate defendants. See *Cotton v. John W. Esh-*

*elman & Sons,* 137 Ga. App. 360, 366 (4) (223 SE2d 757) (1976); cf. *United States v. Jackson,* 935 F2d 832, 839 (4) (7th Cir. 1991).

The majority's conclusion that the evidence was not sufficient to support this inference rests on the fact that the record is devoid of any evidence that Irvani was the source of Savoy's assets. While that is true, there is evidence that Irvani's wife was the sole source of Savoy's assets. Therefore, the jury was authorized to find that neither Irvani's wife, nor his sons, *nor Savoy,* had more than $18,000,000. The majority decision necessarily rests on the hypothesis that the contested millions came from sources other than Irvani's wife, or his sons, or Savoy, notwithstanding the fact that the corporate defendants claimed that the money came from precisely these sources. The majority is thus requiring that the proved circumstances show consistency with the hypothesis claimed by the winning side and inconsistency with a hypothesis contrary to the position taken by the losing side. This conflicts with the principle restated in *Southern R. Co. v. Ga. Kraft Co.,* 258 Ga. 232, 233 (367 SE2d 539) (1988): "Where a decision is required between two or more antagonistic theories, an authorized finding that the evidence preponderates to one theory as against all the others necessarily carries with it a finding that the rejected theories are excluded. [Cit.]"

Was the trial court required to grant the corporate defendants' motion for judgment n.o.v. because of G+H's failure to submit direct evidence of specific conveyances of funds by Irvani? For several reasons, the answer to this question must be no.

Any fact may be proved by circumstantial evidence. *Kapsch v. Stowers,* 209 Ga. App. 767, 769 (1) (434 SE2d 539) (1993). Moreover, recourse to circumstantial evidence is a necessity since proof of fraud is seldom if ever possible by direct evidence. " ' "[T]here is no kind of action wherein it can be held with greater reason that the fact in issue may be inferred from other facts proved than in cases of this character. Circumstances apparently trivial or almost inconclusive, if separately considered, may by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." ' [Cit.]" *Durrence v. Durrence,* 224 Ga. 620, 623 (2) (163 SE2d 740) (1968).

The majority acknowledges circumstances in this case which are "badges of fraud," from which the jury might have inferred that a particular conveyance, once identified, was fraudulent, but reasons that since G+H has not identified or offered proof of any specific conveyance by Irvani, the issue of fraud is not even reached. However, no state or foreign case is cited as authority in support of the holding that a claimant must specify the time of the transfer and describe the instrument by which the alleged fraudulent conveyance was accomplished.

If a claimant must describe the instrument by which the alleged fraudulent conveyance was accomplished, as held by the majority, then debtors effectively put themselves beyond the reach of OCGA § 18-2-22, our statute on fraudulent conveyances, by transferring funds secretively, such as electronically through offshore bearer-share corporations, or by cash. This is directly contrary to OCGA § 18-2-22 (2), which states that "[e]very conveyance of real or personal estate, by writing *or otherwise* . . . made with intention to delay" shall be fraudulent in law against creditors. (Emphasis supplied.) In *McGahee v. McGahee*, 204 Ga. 91, 97 (2) (48 SE2d 675) (1948), the Court held that the statutory provisions on fraudulent conveyances are broad enough to include every transaction by which creditors or others may be defrauded regardless of nature or form. Moreover, in OCGA § 18-2-20, the General Assembly has provided that "[t]he rights of creditors shall be favored by the courts; and every remedy and facility shall be afforded them to detect, defeat, and annul any effort to defraud them of their just rights." Consequently, the majority holding does not comport with Georgia law. It leaves creditors remediless in the face of various devices for surreptitious conveyances of money and denies the jury its proper factfinding role.

I am authorized to state that Chief Judge Pope and Judge Blackburn join in this dissent.

DECIDED DECEMBER 5, 1994 —
RECONSIDERATION DENIED DECEMBER 20, 1994 —

*King & Spalding, L. Joseph Loveland, Jr., Frank C. Jones, Webb, Tanner & Powell, Anthony O. L. Powell*, for Gwinnett Property.

*Branch, Pike & Ganz, James H. Rollins, Cindy J. Davis*, for Irvani.

*Booth, Wade & Campbell, G. Dean Booth, L. Allison Wade, L. Dale Owens*, for G+H Montage GmbH.