## 50294. TRANS-AMERICAN COMMUNICATIONS, INC. v. NOLLE.

ARGUED FEBRUARY 25, 1975 — DECIDED MARCH 21, 1975 —
REHEARING DENIED APRIL 2 AND APRIL 4, 1975.

*Hatcher, Meyerson, Oxford & Irvin, Henry M. Hatcher, Jr.,* for appellants.

*Arnall, Golden & Gregory, John C. Gray,* for appellee.

DEEN, Presiding Judge.

1. (a) The main thrust of the appeal is that there was insufficient evidence to authorize relegation of Tico to the liabilities of Trans-American, and that Nolle had abandoned his duties on insufficient grounds.

The corporate structure has a rather intricate history. Fine and Turpin induced the plaintiff to come to Georgia and with them incorporate Trans-American Communications, Inc. in 1966. Nolle was president of the company for two years, during which time it prospered. Subsequently, International Bank of Washington, D. C. was persuaded to incorporate Tico, Inc. which acquired all of the stock of Trans-American and of four other corporations in which Fine and Turpin were involved. The three men surrendered their stock in these companies (Nolle owned 25% of Trans-American) and all were reimbursed. Tico, Inc. thus became the holding company for the other businesses, and each of the three men was president of one of them, although the boards of directors differed. At the end of 1969 the men agreed to go on half salary temporarily. Thereafter, plaintiff, after being restored to full salary, was again cut to half without his consent. Upon discovery that the other two principals were drawing full salary, and upon a refusal to restore him to his contract rate, plaintiff ceased working "on the understanding that his waiting at home was a temporary situation and that he was going to get repaid and come back to work," a solution which, however, was never actualized. The jury awarded him full salary until the termination of the contract according to its terms.

There is a conflict of evidence as to whether Fine agreed that Nolle should wait at home until the salary issue was straightened out, and as to whether if so he

could bind the defendants by such action. The evidence is quite strong that Tico, Inc. was intended primarily as a conduit for cooperation between the subsidiary corporations, that Nolle ran Trans-American, that Fine and Turpin ran the other companies, and that at the time of the salary dispute Turpin resigned. The evidence authorizes, although it does not demand, a finding that the plaintiff's employment contract was breached by the refusal to restore his salary status, and that he did not abandon his job but acted only upon the breach of contract with the understanding that he was ready, willing and able to return when the employer should rectify the breach.

Testimony as to the interaction of Tico and Trans-American is more complicated, but there was some evidence that the latter was being used and drained of resources by the former in order to improve the position of the other subsidiaries. At this time all five companies were in a single building, officers of the various companies were more or less the same, there was one central bookkeeping office, employees were interchanged between the companies, and there was direct testimony that income was pooled. For example, at one point over $89,000 was removed from the accounts of Trans-American, paid to an affiliate, and never repaid. On another occasion Trans-American furnished personnel to Tico, Inc. for which it should have, but never did, effect reimbursement, the sum amounting to approximately $81,000. Some money which Trans-American was entitled to was used by Tico, Inc. to cover a $400,000 loss of another affiliate. In two other instances highly skilled employees (basically the only salable commodity of Trans-American) were used on other projects without reimbursement. Plaintiff contends that had these proved items alone been paid there would have been sufficient funds in Trans-American to pay the plaintiff's salary, and that the failure to repay was the result of Tico, Inc.'s treatment of the various wholly owned subsidiaries as the various fingers of one hand for the aggrandizement of the parent corporation and its officers. It is true that the separate identity of a subservient corporation is not destroyed *merely* by the

fact that it is used by the parent for the parent's ends, *Condenser Service &c. Co. v. Brunswick Port Authority,* 87 Ga. App. 469 (74 SE2d 398), or even by the fact that they have the same officers and offices. *Porter v. Wootten,* 51 Ga. App. 834 (181 SE 866). " 'To establish the alter ego doctrine it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud.' Fletcher, Cyclopedia of Corporations, Vol. 1, § 41.1, p. 169, and cases cited. See also Nadler, Georgia Corporation Law 69, §§ 60—66; *Condenser Service &c. Co. v. Brunswick Port Authority,* 87 Ga. App. 469, 474 (4), (74 SE2d 398); 18 CJS 380, § 7b." *Farmers Warehouse v. Collins,* 220 Ga. 141, 150 (137 SE2d 619). The evidence being quite ambiguous on the question of intent: That is, whether Tico, Inc. was merely indebted to Trans-American for various transactions, or whether the assets of Trans-American, an unusually successful business when under the management of the plaintiff prior to its change of status into a wholly owned subsidiary of Tico, Inc., were being systematically drained off by Tico, Inc. for the purpose of benefiting its other subsidiaries and therefore itself this issue was properly left for jury determination.

(b) The appellant contends that testimony by Nolle as to financial transactions between the defendants was inadmissible, in that the books and records of the company were the best evidence of these facts. Nolle was president of Trans-American and in each instance stated his personal knowledge of and the part he played in the various transactions. Such testimony is admissible. *Booth v. Schmoller &c. Co.,* 32 Ga. App. 35 (122 SE 636). These objections were without merit.

(c) From what has been said above, it follows that the trial court did not err in submitting to the jury the questions of whether through its excessive control and financial policies Tico, Inc. had blurred the corporate lines between the holding company and its subsidiary so as to render both liable to the plaintiff for the employer's

breach of contract, and whether the acts of Tico, Inc. were responsible for Trans-American's failure and inability to perform.

The trial court did not err in overruling the motion for new trial.

*Judgment affirmed. Evans and Stolz, JJ., concur.*