**IN THE COURT OF APPEALS OF TENNESSEE**

**EASTERN SECTION AT KNOXVILLE**

FILED

**May 13, 1997**

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| SAVCO, INC., | ) | WASHINGTON CIRCUIT |
| | ) | |
| Plaintiff/Appellee | ) | NO. 03A01-9611-CV-00360 |
| | ) | |
| v. | ) | HON. LEWIS W. MAY, JR., |
| | ) | JUDGE |
| CENTURY HOME IMPROVEMENT, | ) | |
| INC. | ) | |
| | ) | |
| Defendant | ) | |
| and | ) | |
| | ) | |
| MARVIN GRIFFITH, | ) | |
| | ) | AFFIRMED |
| Defendant/Appellant | ) | |

Edward T. Brading, Johnson City, for Appellant, Marvin Griffith.
Walter Lee Davis, Jr., Johnson City, for Appellee, Savco.

**O P I N I O N**

INMAN, Senior Judge

This is a suit on open account. The plaintiff corporation sold a quantity of building materials to the defendant corporation which acknowledges the debt; but its sole shareholder, Marvin Griffith, was also held liable for the account and he appeals.

To reach the shareholder it was necessary to 'pierce the corporate veil' and whether the evidence was sufficient to ignore the Charter of the debtor corporation is the issue presented.

Our review is *de novo* on the record, accompanied by a presumption that the findings of fact of the trial court are correct unless the evidence otherwise preponderates. RULE 13(d), TENN. R. APP. P. There is no presumption of correctness with regard to the trial court's determination of questions of law. *NCNB v. Thrailkill,* 856 S.W.2d 250, 153 (Tenn. App. 1993).

The plaintiff, now defunct, was engaged in the business of wholesaling vinyl siding, windows and shutters. The appellant owned 40% of its outstanding shares, and was also its full-time employee.

In early 1994 the plaintiff began doing business with Century Home Improvement, Inc., whose shares were wholly owned by Charles T. Bowers.

Mr. Bowers, on behalf of Century, obtained, in March, 1994, a $5,000.00 line of credit from the plaintiff.

In July, 1994, Mr. Griffith acquired all of the outstanding shares of Century from Mr. Bowers, for which he apparently paid nothing. He testified, somewhat inconsistently, that "I've put money into it for capital," and "the only thing I've ever done is loan the company money." As sole shareholder and President of Century he exercised complete control of the corporation.

The trial court described Century as a "sham corporation . . . set up for the purpose of doing that which, while not illegal, was certainly unethical in the business they were operating," apparently in reference to the fact that a minority shareholder of the wholesaler acquired the retailer of comparable goods. Whatever the business ethics of this acquisition may have been, the evidence does not reflect; but we note, in passing through, that the majority shareholders of Savco not only offered no objection to the acquisition, but expressly approved it. As may be deduced from this record, the appellee defends the judgment upon the basis that Griffith (1) controlled Century especially in the area of paying bills, (2) used corporate funds and employees for his personal benefit, (3) transacted business through Century which did not have sufficient operating capital, (4) had a personal relationship with the majority shareholders of Savco which he misused to incur debt on behalf of Century.

As to (1), there is little or no doubt that Mr. Griffith exercised absolute control of Century, superimposed upon his substantial influence with Savco. As to (2), the evidence consists of testimony that he utilized the services of a Century secretary to compile information for him about another lawsuit in which he was a party and that Century made payments on his boat. As to (3), the evidence reveals that Mr. Griffith "paid no capital into the corporation" which usually had only one or two thousand dollars in its checking account. As to (4), one of the majority shareholders of Savco testified:

Q:     But it's also your testimony that Mr. Griffith, I suppose, hoodwinked Savco into letting Century go over the $5,000. in May of 1995. Is that also your testimony?

A:     I would not consider it hoodwinked. I would consider it using his relationship with Savco and our personal friendship to increase the credit amount.

2

The record does not reveal whether Mr. Griffith was a director of either corporation, and neither party raises the issue of his fiduciary duty, or consequently, of any breach thereof. The appellee merely argues that in light of the circumstances the trial judge correctly held that the Charter of Century should be ignored.

The controlling principles of law are set forth in *Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.,* 691 S.W.2d 522 (Tenn. 1985):

> A corporation, of course, has an existence separate and distinct from that of the owners of its capital stock, but this separate entity may be disregarded upon the showing of special circumstances, such as, that the corporation is a sham or dummy so that failure to disregard it would result in an injustice. *Fidelity Trust Co. v. Service Laundry Co.,* 22 S.W.2d 6 (1929); *American Indemnity Co. v. Southern Missionary Col.,* 260 S.W.2d 269, (1953); *Tennessee Consol. Coal Co. v. Home Ice & Coal Co.,* 386 S.W.2d 918 (1964).
>
> In our most recent case discussing the circumstances which will cause a court to disregard the separate entity of a subsidiary corporation and fix its liability on the parent corporation, we said:
> " . . . application of the instrumentality rule requires proof of the following three elements:
> "(1) The parent corporation, at the time of the transaction complained of, exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.
> "(2) Such control must have been used to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.
> "(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." *Continental Bankers Life, Etc. v. Bank of Alamo,* 578 S.W.2d 625, 632 (1979).
>
> *See also,* 7 Tennessee Jurisprudence 235-236, *Corporations,* sect. 3 (1983); 18 Am. Jur.2d, *Corporations,* sect. 17 (1965); 63 Am. Jur2d. *Products Liability,* sect. 166 (1984).
>
> The conditions under which the corporate entity will be disregarded vary according to the circumstances present in each case and the matter is particularly within the province of the trial court. Moreover, a determination of whether or not a corporation is a mere instrumentality of an individual or a parent corporation is ordinarily a question of fact for the jury. *Trans-American Communications, Inc. v. Nolle,* 134 Ga. App. 457, 214 S.E.2d 717 (1975); *Alexander v. Abbey of The Chimes,* 104 Cal. App. 3d 39, 163 Cal. Rptr. 377 (1980).

We particularly take note of the admonition that "a determination of whether or not a corporation is a mere instrumentality of an individual . . . is ordinarily a question of fact for the jury," here, the trial judge. Applying this standard, we cannot find that the evidence preponderates against the findings of the trial judge.

3

Mr. Griffith was an employee of Savco; he owned 40% of its shares; he was persuasive in the conduct of its wholesaling business. He acquired 100% of the stock of Century, a retail customer of Savco, for which he paid nothing. Century continued to do business with Savco, surpassing its established credit line ten-fold. For all practical purposes Mr. Griffith sold Savco's inventory to himself without the onus of payment. Century doubtlessly was his instrumentality.

While there is no evidence that Century was "set up" to perpetuate a course of dealing, since it pre-existed Mr. Griffith's ownership, we are unable to find that the evidence preponderates against the finding of the Chancellor that the Charter of Century should be ignored under the circumstances of this case.

The Judgment is affirmed at the costs of the appellant.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Houston M. Goddard, Presiding Judge


_____
Charles D. Susano, Jr., Judge

4