A09A1306. RENEE UNLIMITED, INC. et al. v. CITY OF ATLANTA.

(687 SE2d 233)

MILLER, Chief Judge.

The City of Atlanta (the "City") filed a complaint against Simbic, Inc. ("Simbic"), Renee Unlimited, Inc. ("Renee"), Joseph T. Bickers, MGG Properties, Inc. ("MGG"), and Onward Financial, Inc. ("Onward") alleging its entitlement to recover money the City loaned to Simbic under a federal housing loan program that was never repaid. The case proceeded to a jury trial on the City's claim that Renee and Bickers, as Simbic's alter egos, were unjustly enriched by loan proceeds disbursed by the City. The jury returned a verdict in the City's favor in the amount of $731,409.

Renee and Bickers now appeal, arguing that the trial court erred in (i) failing to decide, prior to trial, whether the City's claim against them was barred by the statute of limitation and (ii) failing to grant a directed verdict in their favor at trial. We conclude that Renee and Bickers failed to invoke a ruling before trial on their motion to dismiss on grounds that the City's claim was filed outside the statute of limitation and have waived the right to complain that the trial court erred in failing to rule on the motion. Renee and Bickers also failed to move for a directed verdict at trial. Thus, there is no error on that account. Renee and Bickers are nevertheless entitled to challenge the sufficiency of the evidence on appeal. We have reviewed the trial court's denial of their motion for new trial and entry of judgment on the jury's verdict. As there is some evidence to support the jury's verdict, we affirm.

"In reviewing a trial court's denial of a motion for new trial on the ground there was no evidence to support the verdict, this Court examines the record to determine whether there is any evidence to support the verdict." (Citation omitted.) *Maddox v. Maddox*, 278 Ga. 606 (1) (604 SE2d 784) (2004).

Renee and Bickers were the only remaining defendants at the time of trial because the trial court previously entered default judgments against Simbic and MGG and granted the City and Onward's joint motion to dismiss, with prejudice, the City's claims against Onward and Onward's counterclaims against the City. See OCGA § 9-11-41 (a) (2). The trial court also granted Renee's and Bickers's motion for summary judgment to the extent the City was attempting to recover from them on theories of fraud, fraudulent transfer, fraudulent misrepresentation, misappropriation of funds, and equitable lien.[1] The trial court concluded, however, that "there is a question of fact for the jury as to whether or not [Bickers] and Renee were corporate alter egos of Simbic, and therefore whether or not they were unjustly enriched."

Prior to trial, Renee and Bickers's counsel agreed that his clients would not object to the authenticity of documents the parties previously had relied upon in their summary judgment motions. As such, the City offered a series of documents into evidence at trial but called no witnesses. Renee and Bickers rested after the City presented its case.

Viewed in the light most favorable to the jury's verdict (*ALEA London Ltd. v. Woodcock*, 286 Ga. App. 572, 576 (2) (649 SE2d 740) (2007)), the City's evidence shows that at all relevant times, Bickers was the chief executive officer ("CEO") of Renee and also served as the CEO of Simbic until Simbic was dissolved in 2005. Bickers was also an owner of Renee and Simbic. On August 22, 1995, the Lucy Rucker Aiken Foundation (the "Foundation") sold its interest in an Atlanta apartment complex, West Lake Court Apartments ("West Lake"), to Simbic. In May 1999, Simbic transferred its ownership interest in West Lake to Renee by quitclaim deed but remained indebted to the Foundation under a Purchase Money Deed to Secure Debt and Security Agreement. Bickers executed the quitclaim deed on Simbic's behalf.

On August 9, 1999, the City and Bickers, on behalf of Simbic, executed a Loan Funding Agreement which provided that the City would loan Simbic up to $500,000 in U. S. Department of Housing and Urban Development funds for projects to be carried out at West Lake. On October 3, 2001, the City and Bickers, again on Simbic's behalf, entered into another such Loan Funding Agreement. This provided for an additional loan to Simbic of up to $400,000.

Between October 22, 1999 and July 18, 2002, the City issued a series of checks to "JT Bickers d/b/a Simbic—West Lake Court

---

[1] By the same order, the trial court denied the City's motion for summary judgment as to its claims against Renee.

Apartments'' totaling $731,409. Bickers signed a receipt for each of the checks. One of the checks, a December 1, 2000 check in the amount of $275,000, was endorsed by Bickers for the Foundation. The City issued a second check in the amount of $275,000 to Bickers on October 5, 2001, which was also used to make a payment to the Foundation. The remainder of the funds the City disbursed were paid over to a project management firm for rehabilitation work it performed at West Lake. After receiving payment of $550,000, the Foundation released its security interest in West Lake.

On July 24, 2004, Renee entered into a Commercial Purchase and Sale Agreement (the ''Purchase Agreement'') to sell West Lake to MGG for $1,777,778. The Purchase Agreement contained a special stipulation:

> In the event that the $500,000.00 loan the seller received from the City of Atlanta becomes due and owing or payable, the seller agrees that it is the seller's obligation and responsibility to pay the debt and the seller agrees to subtract the $500,000.00 debt from the purchase price of the property to pay off the $500,000.00 loan.

At closing, Renee received $18,567.75 in cash and agreed to hold a second mortgage on West Lake in the amount of $956,850.54.

In connection with purchasing West Lake, MGG obtained financing from Property Funding Sources, Inc. (''PFS''), but on or about September 29, 2005, MGG refinanced its indebtedness with a loan from Onward. In doing so, Renee agreed to subordinate its second mortgage to Onward's security interest in West Lake. MGG defaulted on this loan, and Onward foreclosed on West Lake and took title to the property under a deed under power. Neither Simbic, Renee, nor Bickers ever repaid the money the City disbursed via checks to Bickers. In its responses to the City's request for admissions, Renee admitted that it was aware that the City's disbursements constituted a loan that was meant to be repaid. There is no evidence, however, that Simbic and the City reached a written agreement as to the terms of repayment, including the due date.

1. Renee and Bickers claim that the trial court erred in failing or refusing to rule on whether the statute of limitation barred the City's unjust enrichment claim. We disagree.

Renee and Bickers raised the statute of limitation issue in their motion for summary judgment, but the matter was not specifically addressed by the trial court in its order denying the motion as to the City's unjust enrichment claim. Renee and Bickers then filed a motion to dismiss the City's unjust enrichment claim on statute of limitation grounds. The trial court initially declined to hear argu-

ment on the motion on the morning of trial, but Renee and Bickers raised the issue again after jury selection but before the presentation of evidence. The trial court again declined to rule on the motion to dismiss, eventually ruling that "I'll continue to keep that under advisement. Once we get a record, you can look at that record and maybe it will help you further deal with that aspect of the case. All right?" Renee's and Bickers's counsel responded, "All right."

Renee and Bickers argue that the trial court should have ruled as a matter of law that the statute of limitation had run and not left the issue for the jury. "A litigant[, however,] cannot submit to a ruling, acquiesce in the ruling, and still complain of same." (Citation and punctuation omitted.) *Fletcher v. Ellenburg*, 279 Ga. 52, 56 (2) (609 SE2d 337) (2005). Renee and Bickers did not object to the trial court's pronouncement that it would take the motion to dismiss under "advisement" and then failed to invoke a ruling at trial. Accordingly, they cannot now complain of the trial court's failure to rule on the motion. See *Dover v. State*, 250 Ga. 209, 212 (4) (296 SE2d 710) (1982).

2. In their second enumeration of error, Renee and Bickers claim that the trial court erred "in failing to grant Appellant's Directed Verdict at trial." The transcript shows, however, that Renee and Bickers failed to move for directed verdict at trial. Rather, after the jury returned its verdict, Renee and Bickers moved for a judgment notwithstanding the verdict.[2] "Failure to move for a directed verdict . . . bars the party from contending on appeal that he is entitled to judgment as a matter of law because of insufficient evidence. This failure does not, however, bar the party from contending that he is entitled to a new trial on that ground." (Citations omitted.) *Ga.*

---

[2] After the trial court denied the initial motion for judgment notwithstanding the verdict and entered judgment for the City, Renee and Bickers again moved for a judgment notwithstanding the verdict, or in the alternative for a new trial, which motion the trial court also denied. In their appellate brief as well as in their second motion for a judgment notwithstanding the verdict, Renee and Bickers describe their initial motion for a judgment notwithstanding the verdict as a motion for a directed verdict, albeit improperly titled. But a motion for a directed verdict made after the return of the jury's verdict is untimely. See *Ga. Farm &c. Ins. Co. v. Hyers*, 291 Ga. App. 316, 317 (1) (661 SE2d 682) (2008); *Dukes v. Ruth*, 203 Ga. App. 246, 247 (2) (416 SE2d 565) (1992) (motion for directed verdict made after jury was charged "presented nothing for the trial court's ruling nor our review"). Nor could Renee's and Bickers's arguments on their motion to dismiss be characterized as a motion for a directed verdict, as the matter was raised before opening argument and well before the close of the City's evidence. See, e.g., *Krause v. Vance*, 207 Ga. App. 615, 619 (7) (428 SE2d 595) (1993) (trial court did not rule on premature motion for directed verdict and appellant did not renew motion at the close of evidence, and so motion was not properly raised). It follows that Renee and Bickers did not move for a directed verdict and their motions for judgment notwithstanding the verdict were improper. "OCGA § 9-11-50 (b) provides that only a party who has filed a motion for directed verdict has the right to contest an adverse verdict by filing a motion for judgment notwithstanding the verdict." *Aldworth Co. v. England*, 281 Ga. 197, 198 (2), n. 4 (637 SE2d 198) (2006).

*Farm &c. Ins. Co. v. Hyers*, 291 Ga. App. 316, 317 (2) (661 SE2d 682) (2008). See *Aldworth Co. v. England*, 281 Ga. 197, 198-201 (637 SE2d 198) (2006). Renee and Bickers also moved for a new trial, which motion the trial court denied. Accordingly, we will "review the sufficiency of the evidence under the 'any evidence' standard of review to determine if [Renee and Bickers] were entitled to a new trial" on the issues of unjust enrichment and alter ego. Id. at 201 (2).

(a) Renee and Bickers contend that the evidence demanded a finding that the City's unjust enrichment claim was filed outside the four-year statute of limitation. See *Evans v. Evans*, 237 Ga. 549, 553 (228 SE2d 857) (1976). "The statute of limitation begins to run on any given claim on the date the claim accrues — in other words, on the date that suit on the claim can first be brought." *Hoffman v. Ins. Co. of North America*, 241 Ga. 328, 329 (245 SE2d 287) (1978).

Here, the evidence showed that the City made the last loan disbursement on July 18, 2002. The City filed its complaint on July 31, 2006, more than four years thereafter. The

> theory of unjust enrichment applies when as a matter of fact there is no legal contract, but where the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for.

(Citation and punctuation omitted.) *Smith v. McClung*, 215 Ga. App. 786, 789 (3) (452 SE2d 229) (1994). The benefits conferred by the City, which included checks written to "JT Bickers d/b/a Simbic-West Lake Court Apartments," and used to pay off the Foundation's deed to secure debt on the West Lake property, and to pay invoices for improvements to West Lake, were outside the limitation period. See *Evans*, supra, 237 Ga. at 553-554 (noting that the defendant could claim "reimbursement under the law in his individual capacity for expenses incurred during the preceding four years in increasing the value of the estate under the principle of unjust enrichment"); *Guill v. Guill*, 60 Ga. 446 (1878) (where brothers had occupied the same house, suit for half the money one brother had expended upon the house six or seven years before was outside the four-year limitation period).

Nevertheless, as the City points out, "the date of accrual is the time when the plaintiff could first have maintained his action to a successful result," not necessarily at the time the benefits were conferred. (Citation and punctuation omitted.) *Engram v. Engram*, 265 Ga. 804, 806 (2) (463 SE2d 12) (1995). In *Engram*, the appellant rented a home from her ex-husband and his new wife. Id. at 804. According to the plaintiff, her ex-husband told her that if in the

future, she wanted to purchase the house, her rent payments would be applied to the purchase price. Id. In 1984, the plaintiff spent $12,000 constructing an additional bedroom to the rented house. Id. In 1993, the ex-husband refused to honor the alleged oral option to purchase. Id. The plaintiff subsequently sued the ex-husband and his wife to specifically enforce the oral option to purchase, and, alternatively, for unjust enrichment, and the trial court granted summary judgment to the ex-husband and his wife. Id. On appeal, our Supreme Court concluded that the plaintiff's unjust enrichment claim was not barred by the statute of limitation, notwithstanding the fact that the improvements were made in 1984, because she "could not have known of the existence of a claim for unjust enrichment based on improvements to the property until 1993, when [her ex-husband] refused to honor the alleged oral option." Id. at 806 (2).

In this case, as in *Engram*, the complainant had also been looking to an agreement which, if honored, would have precluded the assertion of an unjust enrichment claim. Evidence shows that the disbursements under the loan funding agreements were intended to be a loan to Simbic. As of the end of July 2002, the improvements to West Lake were ongoing, the City had not been asked to disburse the entire amount contemplated by the loan funding agreements, and there was no evidence that the City had demanded repayment or received indication that Simbic would not repay the loan. Thus, although Renee and Bickers, who were not parties to Simbic's agreement with the City, might have been enriched by the expenditure of the disbursed funds, the City could not have known at the time that the enrichment was unjust. See id.

(b) Renee and Bickers also contend that no evidence shows an alter ego relationship among Bickers, Renee, and Simbic. We disagree.

"Under the alter ego doctrine, equitable principles are used to disregard the separate and distinct legal existence possessed by a corporation where it is established that the corporation served as a mere alter ego or business conduit of another." (Citation omitted.) *Kissun v. Humana, Inc.*, 267 Ga. 419, 419-420 (479 SE2d 751) (1997). "The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." (Citation and punctuation omitted.) *Amason v. Whitehead*, 186 Ga. App. 320, 321 (367 SE2d 107) (1988). "Plaintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control." (Citation and punctuation

omitted.) *Heyde v. Xtraman*, 199 Ga. App. 303, 306 (2) (404 SE2d 607) (1991).

There was at least some evidence for the jury to conclude that Simbic, Renee, and Bickers were alter egos of each other. When Bickers, on behalf of Simbic, signed the loan agreements with the City contemplating the improvement of West Lake, Simbic had already transferred West Lake to Renee. In that transaction, Simbic charged Renee a purchase price of $10. When the loan funds were subsequently disbursed, the funds were not disbursed to Simbic, but to Bickers, personally, doing business as Simbic—West Lake Court Apartments. Bickers used the money to benefit both Simbic and Renee, as the repayment of the loan to the Foundation relieved Simbic of its debt to the Foundation and also released the security interest on the property, which was owned by Renee, while other loan funds were used to pay for improvements to the property. According to Renee's and Bickers's statement of undisputed facts, which was submitted to the jury as evidence, in 2004 Bickers and Simbic, who had been unable to secure additional financing to complete the project, "opted to sell West Lake to investors they believed would be able to complete the project." Thus, while Bickers and Simbic made the decision to sell West Lake, it was Renee, the legal owner, that actually sold the property, which Simbic had transferred to it for $10, to MGG for $1,777,778. In that transaction, Renee represented that it was responsible for the "loan the seller received from the City of Atlanta," although Renee was not a party to the loan funding agreements. In light of the foregoing, the jury could conclude that among Renee, Bickers, and Simbic, control and responsibility for the West Lake property and the associated loan was commingled and confused and that, under the circumstances, "to adhere to the doctrine of corporate entity would promote injustice or protect fraud." (Citations and punctuation omitted.) *Trans-American Communications v. Nolle*, 134 Ga. App. 457, 460 (1) (a) (214 SE2d 717) (1975). See *Scott Bros., Inc. v. Warren*, 261 Ga. App. 285, 287-288 (4) (582 SE2d 224) (2003); *Mark Six Realty Assocs. v. Drake*, 219 Ga. App. 57, 62 (2) (b) (463 SE2d 917) (1995); *Derbyshire v. United Builders Supplies*, 194 Ga. App. 840, 844 (2) (a) (392 SE2d 37) (1990). "[T]aken as a whole, we . . . cannot say that no evidence exists to support the jury's verdict . . . on this issue." *Mark Six Realty*, supra, 219 Ga. App. at 62 (2) (b).

3. Further, Renee and Bickers argue that the trial court erred in exercising its equitable powers when the City failed to exhaust all remedies at law. As a rule, "there is no equity jurisdiction where there exists an adequate remedy at law." (Punctuation and footnote omitted.) *Total Supply v. Pridgen*, 267 Ga. App. 125, 128 (2) (598 SE2d 805) (2004). However, "[f]or this principle to apply, however,

there must be a presently existing, adequate and complete legal remedy." (Footnote omitted.) Id. Renee and Bickers fail to demonstrate that the City had such a remedy.

Given the foregoing, the trial court did not err in entering judgment on the jury's verdict and denying Renee's and Bickers's motion for new trial. "[A] jury verdict, after approval by the trial court, and the judgment thereon will not be disturbed on appeal if supported by any evidence, in the absence of any material error of law." (Citation omitted.) *Horan v. Pirkle*, 197 Ga. App. 151, 153 (2) (397 SE2d 734) (1990).

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 20, 2009.

*Breedlove, Lassiter & York, Jule C. Lassiter*, for appellants.

*Hollowell, Foster & Gepp, Gary W. Diamond, LaShawn W. Terry*, for appellee.