**FIFTH DIVISION
MCFADDEN, P. J.,
HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 12, 2026**

# In the Court of Appeals of Georgia

A25A1649. ATG SPORTS INDUSTRIES, INC. et al. v. ITS SPRINTURF HOLDINGS, LLC.

McFADDEN, Presiding Judge.

ATG Sports Industries, Inc. and ATG-RAM Industries, LLC jointly appeal from the denial of their motions for new trial or judgment notwithstanding the jury verdict finding that ATG-RAM was the alter ego of ATG Sports and that they were both liable to ITS Sprinturf Holdings, LLC ("ITS") for breach of contract. The appellants contend that the trial court erred in denying their motions because, as two of our opinions have stated, Georgia law has never applied the alter ego doctrine

---

[1]We have circulated this decision amongst all nondisqualified judges of the Court to consider whether this case should be passed upon by all members of theCourt. Fewer than the required numbers of judges, however, voted in favor of considering this case en banc.

horizontally between sibling companies; but a review of the case law reveals that Georgia courts have applied the doctrine in that manner. And because there was some evidence to support the jury's alter ego verdict, we affirm the denial of their motions on those grounds. But in doing so, we must disapprove the language in our two opinions that incorrectly stated that Georgia law has not recognized the alter ego doctrine among sibling companies.

The appellants also assert two objections to the trial court's jury instructions; but they failed to raise those objections below and they have not shown substantial error in the instructions. The appellants' additional challenge to a contract issue that was decided on summary judgment is moot after the jury verdict and entry of judgment thereon. And there was some evidence supporting the jury's award of attorney fees. So we affirm.[2]

1. *Procedural posture*

ITS filed a complaint against ATG-Sports, claiming breach of contract. The complaint alleged that ITS manufactures and supplies artificial turf; that ATG-Sports

---

[2]Oral argument was held in this case on October 22, 2025, and is archived on the court's website. See Court of Appeals of Georgia, Oral Argument, Case No. A25A1649 (October 22, 2025), available at https://vimeo.com/1129972699.

installs and maintains artificial turf on sports fields; that ITS and ATG-Sports entered into an agreement for ATG-Sports "to purchase substantially all of [its] turf requirements" from ITS; and that ATG-Sports breached the agreement by purchasing a substantial amount of its artificial turf requirements from a manufacturer other than ITS. ITS amended the complaint to add ATG-RAM as a defendant, claiming that it was also liable as the alter ego of ATG Sports, and to add a claim for attorney fees under OCGA § 13-6-11. ATG-RAM filed a counterclaim alleging sale of defective products.[3]

The case was tried before a jury. At the close of the plaintiff's evidence, the trial court denied a defense motion for directed verdict on the alter ego theory of liability. The jury subsequently returned a verdict in favor of ITS, finding that ATG-RAM was the alter ego of ATG Sports; that ATG Sports breached the agreement; that ITS was entitled to $715,609 in damages, $53,860 in prejudgment interest, and $120,000 in attorney fees and expenses; and that ITS was not liable on ATG-RAM's counterclaim. The trial court entered final judgment in the amounts awarded by the jury, plus post-

---

[3]ITS points out, as it did at trial, that ATG-RAM's counterclaim included a claim for the return of deposits that had actually been paid by ATG Sports, but it withdrew that claim during the trial.

judgment interest, against ATG Sports and ATG-RAM jointly and severally. ATG Sports and ATG-RAM filed motions for a new trial and judgment notwithstanding the verdict ("JNOV"). The trial court denied the motions, and this appeal followed.

2. *Horizontal alter ego*

ATG Sports and ATG-RAM contend that the trial court erred by refusing to grant them judgment as a matter of law because Georgia has never recognized a "horizontal alter ego" theory of liability amongst sibling companies. Although their contention is supported by statements in two prior opinions from this court, as explained below, those statements were incorrect and are thus disapproved.

In *Cobra 4 Enters. v. Powell-Newman*, 336 Ga. App. 609 (785 SE2d 556) (2016) (physical precedent only), this court rejected an attempt to impose liability horizontally between a company and its sibling corporation, stating that "Georgia courts have never applied the alter ego doctrine to impose liability in this manner." Id. at 614 (2). But this statement was not supported by any legal authority, and "right after this statement, *Cobra 4* expressly considered whether the two entities in that case could be [liable as] each other's alter egos. The *Cobra 4* court concluded that, on the facts, the two corporations were not alter egos because there was no evidence that the

4

two companies were interchangeable entities." *Knieper v. Forest Group USA*, No. 4:15-CV-00222-HLM, slip op. at 23 (III) (B) (6) (ND Ga. Sept. 12, 2016) (2016 U.S. Dist. LEXIS 190287) (citations and punctuation omitted).

Although the unsupported *Cobra 4* statement was non-binding physical precedent, it was later adopted by this court in *Price & Co. v. Majors Mgmt.,* 363 Ga. App. 427 (869 SE2d 587) (2022). See *CMGRP v. Gallant*, 343 Ga. App. 91, 96 (2) (a) n. 15 (806 SE2d 16) (2017) (the fact that an opinion is only physical precedent is of no consequence if a subsequent, unanimous panel of this court fully adopts the opinion's reasoning). *Price & Co.* quoted and emphasized the *Cobra 4* statement recited above and then declined "to incorporate the doctrine of horizontal veil piercing into Georgia jurisprudence and to use it to impose liability on [the sibling companies in that case]." Id. at 438 (4).

But contrary to the statements made in *Cobra 4* and *Price & Co.*, a review of Georgia case law demonstrates, and a Georgia federal district court has concluded, that there is "no reason to hold that Georgia does not recognize horizontal alter ego liability. In fact ,Georgia [courts have] repeatedly considered whether one entity is the alter ego of another." *Knieper*, supra at 19 (III) (B) (6). Accord *Salas v. Statebridge Co.*,

5

No. 1:21-CV-3959-SDG-JCF, slip op. at 45 (II) (E) (ND Ga. July 19, 2022) (2022 U.S. Dist. LEXIS 180565) (rejecting contention that Georgia courts have not recognized horizontal alter ego and veil piercing to impose liability on sibling companies). While some of those cases, like *Cobra 4* itself, have found insufficient evidence to support such an alter ego claim under their particular facts, others have recognized that sibling companies may be liable as alter egos of each other. See, e. g., *NEC Techs. v. Nelson*, 267 Ga. 390, 397 (5) (478 SE2d 769) (1996) (reversing this court's finding of genuine issues of material fact as to whether one company was the alter ego of another company because there was "an absence of any evidence establishing the existence of fact questions regarding the alter ego issue"); *TMX Fin. v. Goldsmith*, 352 Ga. App. 190, 209-210 (6)(833 SE2d 317) (2019) (under alter ego doctrine, the corporate veil may be pierced to hold a family of corporations liable for the debts of each other) (punctuation omitted); *Renee Unlimited v. City of Atlanta*, 301 Ga. App. 254, 259-260 (2) (b) (687 SE2d 233) (2009) (evidence supported jury finding that two corporations and their owner "were alter egos of each other"); *Anthony v. Gator Cochran Const.*, 299 Ga. App. 126, 127-128 (1) (682 SE2d 140) (2009) (affirming denial of motion for new trial or judgment notwithstanding the verdict because some evidence supported

the jury's disregard of the corporate form under alter ego theory and the entry of judgment against all the defendant companies jointly and severally), vacated on other grounds by *Anthony v. Gator Cochran Constr.*, 288 Ga. 79 (702 SE2d 139) (2010); *Am. Cas. Co. v. Schafer*, 204 Ga. App. 906, 908 (3) (420 SE2d 820) (1992) (reversing grant of summary judgment to a Georgia company on claim that it was the alter ego of a Louisiana company because lost financial records were "material to the allegation that the Georgia company is an alter ego of the Louisiana company"); *Derbyshire v. United Builders Supplies*, 194 Ga. App. 840, 843-845 (2) (a) (392 SE2d 37) (1990) (affirming verdict finding sibling corporations and their owner liable for breach of a lease signed by only one of the companies under alter ego and veil piercing doctrines); *Estes Equip. Co. v. Corp. Steel*, 192 Ga. App. 818, 819 (3) (386 SE2d 553) (1989) (affirming trial court's finding at a bench trial that one company was the alter ego of another company). See also *Lowery v. Noodle Life*, 363 Ga. App. 1, 3-5 (a) (869 SE2d 600) (2022) (decided one day after *Price & Co.*, considering merits of horizontal alter ego claim regarding sibling companies and affirming grant of summary judgment on that claim because there was no evidence that the two companies were interchangeable entities).

Because Georgia courts have regularly considered whether one entity is the alter ego of another and have applied the alter ego doctrine to determine liability between sibling companies, we reject the contention of ATG Sports and ATG-RAM that Georgia law does not recognize the horizontal alter ego theory of liability between sibling companies. The trial court thus did not err in denying their motions for new trial or JNOV on this basis. And any statements to the contrary in both *Cobra 4* and *Price & Co.* must be, and hereby are, disapproved.

3. *Evidence supporting alter ego verdict*

ATG Sports and ATG-RAM argue that the trial court erred in denying their motions for new trial or JNOV because there was no evidence supporting the jury's alter ego verdict. We disagree.

> When reviewing a trial court's denial of a motion for JNOV or new trial, this [c]ourt determines if there is any evidence to support the jury's verdict. If a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of [a] defendant's motions for new trial and JNOV will not be disturbed.

*Harris v. Martin*, 373 Ga. App. 158, 158-159 (908 SE2d 17) (2024) (citation and punctuation omitted).

So construed, the evidence showed that Paul Driver is the chief executive officer and owner of both ATG Sports and ATG-RAM. The companies, which are headquartered together, share the same address, telephone number, office space, and some employees. Both companies are engaged in the design and installation of athletic fields and tracks, primarily for educational institutions located in the Midwest. Both companies hold the same type of contractor's license, are licensed to do business in the same five states, and use the same individuals to perform turf installation jobs. ATG Sports has a website listing its field installations, but the list also includes ATG-RAM fields without identifying them as such or otherwise distinguishing between the companies.

ATG Sports entered into the supply agreement with ITS, while ATG-RAM was not identified as a party to the contract signed by Driver. The contract included an exception for a pre-existing contractual obligation that ATG Sports had with other suppliers "in the amount of $600,000" and provided that ATG Sports could fulfill that obligation before "switching most of its turf requirements to ITS." Evidence

9

presented at trial, however, authorized the finding that ATG-RAM, not ATG Sports, had actually made the $600,000 payment that was excepted under the contract.

That evidence showed that the exception concerned a $600,000 deposit for various fields, including a YMCA field, that ATG Sports had ordered from turf manufacturer Turfstore. But there was no such payment from ATG Sports to Turfstore in that amount. Instead, the evidence showed that one month before the contract was executed by ATG Sports, ATG-RAM made the $600,000 payment to Turfstore for, among other things, a YMCA job.

ATG-RAM also bought turf from ITS on numerous occasions during the term of the contract. For those purchases, ATG-RAM paid the same discounted price provided by the contract to ATG Sports. As Driver admitted, throughout his companies' relationship with ITS, ATG-RAM always paid the same price that ATG Sports paid under the contract.

In addition to purchasing turf from ITS while the contract was in effect, ATG-RAM also bought turf from other suppliers. When ITS confronted ATG Sports in emails and letters about such purchases constituting breaches of their supply agreement, ATG Sports never responded that ATG-RAM was a separate company

not bound by the contract. According to the testimony of ITS' former chief operating officer, ATG Sports never claimed to ITS that there were separate ATG companies; rather, the parties operated under the agreement as if ATG was one company, all the pricing was done as if it were one company, and that contract pricing was accepted "all under the ATG umbrella."

The contract further granted permission to ATG Sports to use ITS' patented technology "involving a woven/non woven backing with an all rubber infill" for "as long as the terms of this agreement are met by ATG." ITS issued a certificate of authority to ATG Sports for use of the patent. Despite the certificate authorizing only ATG Sports to use the patent, ITS presented evidence showing that ATG-RAM had won a project bid that required submission of the certificate authorizing the use of the patent.

That evidence authorized the jury to find that ATG Sports abused the corporate form by using ATG-RAM to avail itself of the contract when it was beneficial but then to evade supply requirements under the agreement when it was not beneficial, and so authorized them to to apply the alter ego doctrine.

> Under the alter ego doctrine, equitable principles are used to disregard the separate and distinct legal existence possessed by a corporation

11

where it is established that the corporation served as a mere alter ego or business conduit of another. The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility. Plaintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control. Additionally, when the elements of the doctrine are satisfied, the doctrine of piercing the corporate veil also can be used to hold a family of corporations liable for the debts of each other. In order to pierce the corporate veil, however, there must be some evidence of abuse of the corporate form, and sole ownership of a corporation is not a factor.

*Lowery*, supra at 3-4 (a) (citations and punctuation omitted).

The evidence authorized the jury to find that ATG Sports and ATG-RAM held themselves out to ITS as one entity; that they commingled and confused otherwise separate assets by using the $600,000 ATG-RAM payment to another supplier as the basis for an exception in the supply contract for ATG Sports; that they acted as interchangeable entities by ATG-RAM taking advantage of the same favorable pricing and use of the ITS patent given to ATG Sports under the contract with ITS; and that ATG Sports failed to answer and deny ITS business communications asserting that turf purchases from other suppliers by ATG-RAM violated the supply contract. See OCGA § 24-14-23 ("In the ordinary course of business, when good faith requires an

12

answer, it is the duty of the party receiving a letter from another to answer within a reasonable time. Otherwise, the party shall be presumed to admit the propriety of the acts mentioned in the letter of the party's correspondent and to adopt them."). In short, there was evidence supporting a jury finding that the ATG defendants "disregarded the separateness of [their] legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control." *Lowery*, supra at 4 (a) (citation and punctuation omitted).

In arguing otherwise, ATG Sports and ATG-RAM point to purported inconsistencies and conflicts in the evidence which supported their contention that they were separate entities that did not act as alter egos, such as Driver's testimony that the companies kept separate books, had separate bank accounts, had separate insurance for vehicles and equipment, and performed different functions. But any such inconsistencies and conflicts were matters for the jury to resolve.

> It is not the role of this [c]ourt, but is the role of a jury to sort through the evidence, resolve conflicts, and make findings of fact based on the evidence it finds credible. A jury in arriving at a conclusion upon disputed issues of fact may believe a part of the testimony of a witness or witnesses, and reject another part thereof, it being their duty to ascertain the truth of the case from the opinion they entertain of all the evidence submitted for their consideration. Indeed, . . . it is a jury's prerogative to accept or reject, in whole or in part, the evidence submitted[.]

13

*Carlisle v. Broe*, 363 Ga. App. 238, 250-251 (870 SE2d 792) (2022) (citation and punctuation omitted).

In resolving any evidentiary conflicts in this case, "[t]here was at least some evidence for the jury to conclude that [ATG-Sports and ATG-RAM] were alter egos of each other." *Renee Unlimited*, supra at 260 (2) (b). Because "we cannot say that no evidence exists to support the jury's verdict on this issue[,]" we affirm the denial of the motions for new trial and JNOV. Id. (citation and punctuation omitted),

4. *Jury instructions*

ATG Sports and ATG-RAM contend that the trial court's jury instruction on alter ego was erroneous and that the court erred in failing to give a statute of limitation instruction. But after the jury instructions were given, the appellants "failed to object to the trial court's charge on [either] basis. That failure constitutes waiver." *Prime Retail Dev. v. Marbury Eng'g Co.*, 270 Ga. App. 548, 554 (3) (608 SE2d 534) (2004). See OCGA § 5-5-24 (a) ("in all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection"). Compare *McDowell v. Hartzog*, 292 Ga. 300, 302 (736 SE2d 395)

14

(2013) (objection to a jury charge preserved for appeal where, after the charge was given, counsel referenced a previous objection for which the grounds were distinctly stated and that objection was noted by the trial court).

Nevertheless, we still "consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not." OCGA § 5-5-24 (c).

> Instances of reversal under [OCGA § 5-5-24] (c) are very rare. A charge constituting substantial error harmful as a matter of law is one that is blatantly apparent and prejudicial to the extent that it raises the question of whether the losing party has, to some extent at least, been deprived of a fair trial because of it, or a gross injustice is about to result or has resulted directly attributable to the alleged errors.

*Smith v. Norfolk S. Ry.*, 337 Ga. App. 604, 612 (2) (788 SE2d 508) (2016) (citations and punctuation omitted). Neither of the alleged errors in this case constitute the rare instance in which reversal is mandated.

(a) *Alter ego*

Contrary to the appellants' contention, the trial correctly instructed the jury on the alter ego doctrine. The court charged the jury that the plaintiff must show that there was an abuse of the corporate form and that the "defendant disregarded the separateness of legal entities by co[m]mingling on an interchangeable or joint basis or

15

confusing the otherwise separate properties, records or control." See *Lowery*, supra at 4 (a). The court also properly instructed the jury that ATG Sports and ATG-RAM are companies that "possess legal existence separate and apart from one another" and that unless the jury found that ATG-RAM was the alter ego of ATG Sports, then they "are considered separate and distinct legal entities, which are not interchangeably responsible for" each other's debts.

Despite the trial court's correct jury charges on alter ego, the appellants argue that the court should have also given their proposed instruction that certain factors standing alone, such as sole ownership or overlapping areas of business, are insufficient to invoke the alter ego doctrine. But the evidence did not merely show such fact-specific factors standing alone, and the jury instructions as a whole adequately covered the alter ego doctrine. Accordingly, the appellants have "failed to show that the trial court erred, much less substantially erred, by failing to include [their] proposed instruction." *Georgia CVS Pharm. v. Carmichael*, 362 Ga. App. 59, 69 (2) (865 SE2d 559) (2021).

(b) *Statute of limitation*

ATG Sports and ATG-RAM claim that they were harmed by the court's failure to give a requested statute of limitation charge because it led the jury to award damages for breaches of contract committed outside the statute of limitation. At the charge conference, they raised no objection when the court indicated it would not give the charge and they likewise raised no such objection after the jury instructions. So as noted above, we review only for substantial error. See OCGA § 5-5-24 (c)

The appellants have not identified any specific breaches of contract occurring outside the statute of limitation that the jury may have considered. Indeed, they have not supported this claim with any citations to the record, including evidence that might have supported such a jury charge. See Court of Appeals Rule 25 (d) (1) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration."); *Dillard v. Schilke*, 352 Ga. App. 158, 160-161 ((3) (834 SE2d 278) (2019) ("It is not the function of this [c]ourt to cull the record on behalf of a party in search of instances of error. The burden is upon the party alleging error to show it affirmatively in the record.") (citation and punctuation

omitted). Under these circumstances, ATG Sports and ATG-RAM have failed to show substantial error by the record.

5. *Termination date of contract*

Appellants enumerate that the trial court should have found that the contract, by its terms, terminated in January 2014. This issue was decided on summary judgment. ATG Sports moved for summary judgment on this ground and the trial court denied the motion, finding that there was a contractual ambiguity as to the termination date that needed to be resolved by a jury. To the extent this enumeration challenges the trial court's denial of summary judgment on this ground — by arguing that the court erred in finding an ambiguity in the contract and in allowing the jury to decide the issue — it provides nothing for review. "[A]fter verdict and judgment, it is too late to review a judgment denying a summary judgment, for that judgment becomes moot when the court reviews the evidence upon the trial of the case." *Moore v. Moore*, 281 Ga. 81, 85 (6) (635 SE2d 107) (2006) (citation and punctuation omitted).

To the extent this enumeration challenges the denial of a directed verdict on the issue of the termination date of the contract, the any evidence "standard[] of review for directed verdict and JNOV [is] the same." *Ga. Trails & Rentals v. Rogers*, 359 Ga.

App. 207, 208 (1) (855 SE2d 103) (2021) (citation and punctuation omitted). See also *Whitaker Farms v. Fitzgerald Fruit Farms*, 347 Ga. App. 381, 385 (1) (819 SE2d 666) (2018) ("The standard of appellate review of a trial court's denial of a motion for a directed verdict or judgment notwithstanding the verdict is the any evidence test.") (citation and punctuation omitted). Under that standard, we "must construe the evidence in a light most favorable to the prevailing party in the court below" and "determine whether there is any evidence to support the jury's verdict." *Patterson-Fowlkes v. Chancey*, 291 Ga. 601, 602 (732 SE2d 252) (2012).

Here, the jury was not required to accept ATG Sports and ATG-RAM's evidence concerning the alleged January 2014 termination date of the contract and instead was authorized to find from other evidence presented by ITS, including a 2016 email from Driver to ITS asserting that "there is a contract between us[,]" that the supply contract remained in effect after January 2014, that the parties operated under the contract after that date, and that they did not terminate it until 2016. See *Carlisle*, supra at 251 ("it is a jury's prerogative to accept or reject, in whole or in part, the evidence submitted") (citation and punctuation omitted). Because there were conflicts in the evidence and the evidence did not demand a particular verdict, the trial

court did not err in denying a directed verdict or JNOV on this issue. See *Jones v. Bebee*, 353 Ga. App. 689 (839 SE2d 189) (2020) ("a directed verdict is proper only when there are no conflicts in the evidence as to any material issue, and the evidence — with all reasonable deductions — demands a particular verdict").

6. *Attorney fees*

ATG Sports and ATG-RAM contest the sufficiency of the evidence supporting the jury's award of attorney fees under OCGA § 13-6-11, which authorizes such an award where a defendant has acted in bad faith. "[T]he element of bad faith that will support a claim for litigation expenses under OCGA § 13-6-11 must relate to the acts in the transaction itself prior to the litigation, not to the conduct during or motive with which a party proceeds in the litigation." *Fresh Floors v. Forrest Cambridge Apts.*, 257 Ga. App. 270, 271 (570 SE2d 590) (2002). "If . . . there is bad faith in the transaction, OCGA § 13-6-11 attorney fees are authorized regardless of whether a bona fide controversy otherwise existed between the parties." *Kopp v. First Bank*, 235 Ga. App. 520, 524 (3) (509 SE2d 384) (1998) (citations and punctuation omitted). "Bad faith authorizing an award of attorney's fees in a contract action must relate to the conduct of entering the contract or to the transaction and dealings out of which the cause of

action arose, which includes not only the negotiations and formulation of the contract but also performance of the contractual provisions." *Beall v. F. H. H. Constr.*, 193 Ga. App. 544, 547 (5) (388 SE2d 342) (1989) (citation and punctuation omitted).

Here, the jury was authorized to find from the evidence recounted above that ATG Sports entered into the contract in bad faith by including a misleading exception in its favor based on a $600,000 payment that it had not made and that was instead made by ATG-RAM. And thereafter, the jury could have found that ATG Sports and ATG-RAM acted interchangeably under the contract terms when it was to their benefit, but breached it when it was not."The issue of attorney fees under OCGA § 13-6-11 is a question for the jury, and an award will be upheld if any evidence is presented to support the award." *Wilson v. Wernowsky*, 355 Ga. App. 834, 847 (4) (846 SE2d 101) (2020) (citation and punctuation omitted). See also *Gorin v. FPA 2*, 184 Ga. App. 239, 241 (361 SE2d 193) (1987) (bad faith under OCGA § 13-6-11 is a jury question). Because the award in this case was supported by some evidence, it must be upheld.

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*